**State v. Hedrick**
*[Cite as 8 AOA 403]*

*Case No. 57844*
*Cuyahoga County, (8th)*
*Decided December 20, 1990*

*John T. Corrigan, Cuyahoga County Prosecutor, Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*David L. Doughten, Walsh & Doughten, 2000 Standard Building, 1370 Ontario Street, Cleveland, Ohio 44113, for Defendant-Appellant.*

MATIA, P.J.

Defendant-appellant, William J. Hedrick, appeals from his conviction for two counts of aggravated murder, four counts of aggravated arson and one count of aggravated burglary. The appellant's appeal is well taken in part.

## I. THE FACTS
### A. THE INDICTMENT

On December 9, 1987, the appellant was indicted by the grand jury of Cuyahoga County as follows:

1) aggravated murder in violation of R.C. 2903.01 with a felony murder specification;

2) aggravated murder in violation of R.C. 2903.01 with a felony murder specification;

3) aggravated arson in violation of R.C. 2909.02;

4) aggravated arson in violation of R.C. 2902.02;

5) aggravated arson in violation of R.C. 2902.02;

6) aggravated arson in violation of R.C. 2909.02; and

7) aggravated burglary.

It should be noted that the felony murder specifications attached to counts one and two of the indictment could have resulted in the imposition of the death penalty upon the appellant.

### B. THE ARRAIGNMENT

On December 15, 1987, the appellant was arraigned whereupon a plea of not guilty was entered to all seven counts of the indictment.

### C. THE JURY TRIAL AND VERDICT

On April 17, 1989, a jury trial was commenced with regard to the seven counts of the indictment. On April 20, 1989, the jury returned a verdict of guilty to the two counts of aggravated murder, guilty with regard to the four counts of aggravated arson and guilty with regard to the one count of aggravated burglary. The jury, however, did not return a verdict of guilt as to the two felony murder specifications associated with the two counts of aggravated murder thus eliminating the appellant's potential exposure to the sentence of death.

### D. THE SENTENCE OF THE TRIAL COURT

On April 27, 1989, the trial court sentenced the appellant to incarceration within the Southern Correctional Institution, Lucasville, Ohio for a term of life imprisonment with regard to each count of aggravated murder, ten years to twenty-five years of imprisonment with regard to each of the four counts of aggravated arson and ten years to twenty-five years of imprisonment with regard to the one count of aggravated burglary. The trial court further ordered that the sentences of incarceration run consecutive to each other.

### E. THE TIMELY APPEAL

Thereafter, the appellant timely brought the instant appeal from his conviction and the sentence as imposed by the trial court.

## II. THE FIRST ASSIGNMENT OF ERROR

The appellant's first assignment of error is that:

"THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF PREJUDICIAL OTHER ACTS IN TO (SIC) EVIDENCE."

### A. ISSUE RAISED: THE INADMISSIBILITY OF CLAIMED OTHER ACTS TESTIMONY ADDUCED AT TRIAL

The appellant, in his initial assignment of error, argues that the trial court erred in allowing the state to introduce evidence of appellant's "other acts." Specifically, the appellant argues that the testimony of the mother of the two deceased children, with regard to the filing of previous charges against the appellant and police reports vis-a-vis the children involved in the fire, was "other acts" testimony and inadmissible at trial. This assignment of error is not well taken.

### B. THE ALLEGED IMPERMISSIBLE OTHER ACTS TESTIMONY

During the course of trial, the following testimony was adduced on behalf of the State of Ohio from Joan Othburg:

"Q. Did there come a time in 1986 when you personally brought some charges against the defendant, Mr. Hedrick?

"A. Yes.

"Q. Just yes or no. Did it concern your children?

"A. Yes.

"Q. Did you make a police report concerning these matters?

"MR. ZUCCO. Your Honor, I have to make a continuing objection to this.

"THE COURT. Sustained as to form, counsel.

"Q. What action did you take concerning Mr. Hedrick?

"A. I called the police and made a report on the issue.

"Q. Just yes or no. Was anything done to Mr. Hedrick by the police?

"A. Yes. Charges were brought against -

"MR. ZUCCO. Objection.

"MR. SHANNON. Objection.

"THE COURT. Overruled. She may answer.

"Q. Was anything done by the police to Mr. Hedrick?

"A. Yes.

"Q. What was done?

"A. They brought charges against him.

"MR. MARINO. I have nothing further."

## C. EVID. R. 404(B) AND "OTHER ACTS" TESTIMONY

Evid. R. 404(B), which deals with the admissibility of evidence to prove conduct, provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge identity, or absence of mistake or accident."* (Emphasis added.)

## D. "OTHER ACTS" TESTIMONY WAS PERMISSIBLE

The "other acts" testimony of Joan Othburg, with regard to the appellant's criminal involvement with the Othburg children, was relevant and demonstrated a possible basis of revenge as the impetus for the appellant's act of arson. The testimony of Joan Othburg was relevant and demonstrated the appellant's motive, intent, knowledge and absence of mistake or accident. This testimony was clearly admissible pursuant to Evid. R. 404(B). *State v. Jamison* (1990), 49 Ohio St. 3d 182; *State v. Hill* (1987), 37 Ohio App. 3d 72.

Thus, the trial court did not err in admitting the testimony of Joan Othburg with regard to the appellant's "other acts" and the

appellant's first assignment of error is not well taken.

## III. THE SECOND ASSIGNMENT OF ERROR

The appellant's second assignment of error is that:

"THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTOR TO COMMENT UPON APPELLANT'S FAILURE TO TAKE THE WITNESS STAND AND UPON MATTERS NOT INTRODUCED INTO EVIDENCE, THEREBY DENYING THE APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL."

## A. ISSUE RAISED: PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS

The appellant, in his second assignment of error, argues that the trial court erred by permitting the prosecutor to commit prosecutorial misconduct during the closing arguments of trial. Specifically, the appellant raises two claims of prosecutorial misconduct:

1) prosecutor's comments during closing argument upon the appellant's failure to testify during the course of trial; and

2) prosecutor's comments during closing argument upon matters outside the record. This assignment of error is well taken.

## B. TEST FOR PROSECUTORIAL MISCONDUCT

The Supreme Court of Ohio, with regard to prosecutorial misconduct, held in *State v. Maurer* (1984), 15 Ohio St. 3d 239, that a claim of prosecutorial misconduct must be considered in light of the entire case.

"Ohio courts have suggested that the effect of counsel's misconduct 'must be considered in the light of the whole case.' See, e.g., *Mikula v. Balogh* (1965), 9 Ohio App. 2d 250, 258 [38 O.O. 2d 311]. And where misconduct of counsel '"*** is of such a prejudicial character that the prejudice resulting therefrom cannot be eliminated or cured by prompt withdrawal, and admonition and instructions from the court of the jury to disregard it, a new trial should be granted, or the judgment reversed, notwithstanding cautions, admonition, and instructions by the trial.'" *Book v. Erskine & Sons, Inc.* (1951), 154 Ohio St. 391, 401 [43 O.O. 334].

"In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives

the defendant of a fair trial. *State v. Papp* (1978), 64 Ohio App. 2d 203, 211 [18 O.O. 3d 157]; *State v. Wade* (1978), 53 Ohio St. 2d 182, 186 [7 O.O. 3d 362]; *State v. DeNicola* (1955), 163 Ohio St. 140, 148 [56 O.O. 185]; *Scott v. State* (1923), 107 Ohio St. 475, 490-491. This, then, is the point at which we begin in our analysis of this issue." *State v. Maurer, supra,* at 266.

The Supreme Court of Ohio has also established a two-part test which must be applied to any claim of prosecutorial misconduct.

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *United States v. Dorr, supra,* at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. *Berger v. United States, supra,* at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *State v. Thayer* (1931), 124 Ohio St. 1; DR 7-106 (C)(4) of the Code of Professional Responsibility. Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and '*** [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. ***' EC 7-37." *State v. Smith* (1984), 14 Ohio St. 3d 13, at 14.

## C. FIRST CLAIM OF PROSECUTORIAL MISCONDUCT: COMMENT ON FAILURE OF APPELLANT TO TESTIFY

The appellant, in his first claim of prosecutorial misconduct, argues that the prosecutor improperly commented in closing argument upon the appellant's failure to testify during the course of trial. During closing arguments, the following comments were made by the prosecutor:

"There was no reason for there to be a fire there. The electricity was shut off. There was no gas in that area. You might say, and you very well might say, well, the candles could have caught fire to something, could have ignited something. Now, I want you to think about that for a minute. *Unless you are going to disbelieve Mr. Smith and disbelieve other people there, the defense has given you no reason to disbelieve anything. They just cross-examined. They haven't countered with*

*anything, not that they are obliged to; but when you look at a case like this, if I say something and accuse that man of doing something and he says you are wrong, Marino, I didn't do it, then you have a difference of opinion. You are going to say you are going to believe Mr. Conway or Mr. Marino. But if I accuse him of something and he says nothing, then you look back at me and say now, let's analyze what Marino says* --

"MR. SHANNON. Objection.

"THE COURT. Counsel, will you approach the side bar?

"***

"Well, let me suggest this to you: If this doesn't make common sense, nothing in this case will. It is the State's contention that this man deliberately set that fire because he had a reason to, and that he admitted it to Mr. Witcher. The allegation is that on April 30th of 1987 he was in that house setting that fire. Right, we don't have any direct evidence. This is not the type of situation where a man goes out and yells I'm going to burn my family out to get even with my sister-in-law. That just doesn't happen. There is a simple adage of life: People; if you are alive, everybody has got to be somewhere. *If you are not here, you are someplace else. We put him in that house. They haven't told you the man is innocent. Where is he if he isn't in that house?*

"MR. ZUCCO. Objection.

"THE COURT. Overruled.

"MR. MARINO. I think that is a very fair question: Where is he if he isn't in that house burning that fire? You can't say you don't know. Twelve minds are going to look at this case. *You tell me where you think he was if he wasn't burning that house. Where is the evidence that puts him someplace else other than in that house?* No arson case is easy to prove. The system is predicated on the fact that a person can look at the facts reasonably, draw reasonable inferences and conclusions and give this man a fair trial and arrive at a fair decision. You are in the unique position of looking at facts without any counter evidence."(Tr. 288, 289, 340, 341.) (Emphasis added.)

Thus, the appellant claims that the prosecutor improperly commented on the appellant's failure to testify during the course of trial.

Clearly, a prosecutor may not comment upon the failure of a defendant to testify at

trial. *Griffin v. California* (1965), 380 U.S. 609.

### D. PROSECUTOR IMPROPERLY COMMENTED ON APPELLANT'S SILENCE

In the case *sub judice,* the comments of the prosecutor with regard to the silence of the appellant were highly improper and prejudicial to the appellant in light of the evidence adduced by the State of Ohio during the course of trial. Although twelve witnesses testified on behalf of the State of Ohio, the testimony presented was circumstantial in nature. In fact, no direct evidence was presented at trial which linked the appellant to the arson which resulted in the death of two innocent children. This lack of direct and substantial evidence to support the appellant's conviction, absent the improper comments of the prosecutor, cannot result in the finding of harmless error beyond a reasonable doubt. Cf. *State v. Phillips* (April 13, 1989), Cuyahoga App. No. 55214, unreported; *State v. Shaw* (Jan. 26, 1989), Cuyahoga App. No. 44214, unreported. To the contrary, this court can but find that the jury was improperly influenced by the prosecutor's unnecessary and unwarranted comments with regard to the failure of the appellant to testify during the course of trial. *State v. DePew* (1988), 38 Ohio St. 3d 275; *State v. Smith* (1984), 14 Ohio St. 313; *State v. Vajda* (March 29, 1990), Cuyahoga App. No. 57854, unreported.

Therefore, the appellant's first claim of prosecutorial misconduct is well taken.

### E. SECOND CLAIM OF PROSECUTORIAL MISCONDUCT: COMMENT ON MATTERS OUTSIDE THE RECORD

The appellant's second claim of prosecutorial misconduct involves comments of the prosecutor on matters outside the record. The appellant argues that the prosecutor attempted to bolster the credibility of a witness.

The following comments were made by the prosecutor during closing argument:

"MR. MARINO. The point is he told you--Mr. Witcher told you the agreement was we'll get him out of jail and ship him back to Summit County where he lives. Now, the defense will argue with you that is a great deal. Well, fine, let them make of it what they will. The point is, though, that he had already made his statement, he had already been taped as to what the defendant had told him by the time the agreement had been

made; and as of this time, we met our agreement with him. We sent him back to Summit County. There is no other agreement in this case, and I'll tell you this: If you doubt that in any way, shape or form, I will put my reputation as having made this statement to you on the word of defense counsel when they talk to you. If they tell you that they think that I'm lying to you or hiding anything from you, then you believe them."

"MR. SHANNON. Objection.

"THE COURT. Overruled.

"MR. MARINO. We've known each other for a long time and we always dealt fairly with one another. The only reason that man testified is because we made an agreement with him to ship him back to Summit County. That is it. " (Tr. 303, 304.)

### F. PROSECUTOR IMPROPERLY ENHANCED CREDIBILITY OF WITNESS

A review of the comments of the prosecutor, with regard to the statement of testimony of Thomas Witcher, the state's witness and informant, demonstrates an attempt to strengthen the credibility of the witness. Such an attempt, to bolster the credibility of a witness through personal reassurance to the jury, is highly improper and highly prejudicial to the appellant. *State v. Petrey* (Oct. 5, 1989), Cuyahoga App. No. 55273, unreported. In addition, the comments of the prosecutor were not harmless beyond a reasonable doubt.

Therefore, the appellant's second claim of prosecutorial misconduct is supported in the record and the appellant's second assignment of error is well taken.

### IV. THE THIRD ASSIGNMENT OF ERROR

The appellant's third assignment of error is that:

"THE TRIAL COURT ERRED BY ENTERING JUDGMENTS OF CONVICTIONS FOR ALL FOUR COUNTS OF AGGRAVATED ARSON."

### A. ISSUE RAISED: FOUR COUNTS OF AGGRAVATED ARSON WERE OFFENSES OF SAME OR SIMILAR IMPORT

The appellant, in his third assignment of error, argues that he was improperly convicted of four separate counts of aggravated arson. Specifically, the appellant argues that R.C. 2941.25, which deals with multiple counts, prevented his conviction for four separate counts of aggravated arson as they were

allied offenses of similar import. This assignment of error is well taken.

## B. R.C. 2941.25(A): OFFENSES WHICH CONSTITUTE SAME OR SIMILAR IMPORT

R.C. 2941.25(A), which deals with multiple counts and convictions, provides that:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

Pursuant to R.C. 2941.25 a defendant may be charged with multiple similar offenses which flow from the same course of proscribed conduct. A defendant, however, may only be convicted and sentenced with regard to one offense where the multiple offenses constituted allied offenses of similar or same import. Cf. *State v. Price* (1979), 60 Ohio St. 2d 136; *State v. Logan* (1979), 60 Ohio St. 2d 126.

## C. APPELLANT IMPROPERLY CONVICTED AND SENTENCED WITH REGARD TO FOUR SEPARATE COUNTS OF AGGRAVATED ARSON

In the case *sub judice,* the appellant was charged with four separate counts of aggravated arson. Each separate count of aggravated arson charged that the appellant "*** by means of fire or explosion, knowingly created a substantial risk of serious physical harm ***" to Karl Othburg, Christine Othburg, Thomas Smith and Serena Powell. Further review of the record demonstrates that the four separate counts were each related to the single fire that destroyed the home located at 2802 Chatham Avenue, Cleveland, Ohio, on April 30, 1987.

Clearly, the appellant was Charged in four separate counts with the commission of a single act of aggravated arson. Therefore, the trial court did err in sentencing the appellant on four separate counts of aggravated arson since the four offenses of aggravated arson were allied offenses of similar import pursuant to R.C. 2941.25(A). *State v. Parnell* (May 24, 1979), Cuyahoga App. No. 38756, unreported.

The appellant's third assignment of error is well taken.

## V. THE FOURTH ASSIGNMENT OF ERROR

The appellant's fourth assignment of error is that:

"THE TRIAL COURT'S FAILURE TO PROPERLY INSTRUCT THE JURY ON THE USE OF CIRCUMSTANTIAL EVIDENCE DEPRIVED THE APPELLANT HIS CONSTITUTIONALLY GUARANTEED RIGHT TO A FAIR TRIAL."

## A. ISSUE RAISED: TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY

The appellant, in his fourth assignment of error, argues that the trial court improperly instructed the jury. Specifically, the appellant argues that the trial court failed to properly instruct the jury that inferences which are equally consistent with innocence or guilt must be resolved in favor of the defendant. The appellant further argues that failure of the trial court to instruct the jury as to equal inferences was prejudicial. This assignment of error is well taken.

## B. FAILURE TO PROPERLY INSTRUCT JURY WAS PLAIN ERROR

Although the record fails to disclose that the appellant objected to the trial court's jury instruction as mandated by Crim. R. 30 in order to preserve error, the failure of the trial court to properly instruct the jury with regard to equal inferences was plain error. *State v. Lockett* (1976), 49 Ohio St. 2d 48; *State v. Carter* (1985), 23 Ohio App. 3d 27.

## C. *STATE v. KULIG* AND INSTRUCTION ON EQUAL INFERENCES

The Supreme Court of Ohio, in *State v. Kulig* (1974), 37 Ohio St. 2d 157, established that the circumstantial evidence used to support a finding of guilty must be irreconcilable with any reasonable theory of innocence.

"Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State v. Kulig, supra,* syllabus.

## D. TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO INSTRUCT THE JURY ON EQUAL INFERENCES

As previously discussed with regard to the appellant's second assignment of error, the State of Ohio presented primarily circumstantial evidence in an effort to prove the elements of aggravated murder, aggravated arson and aggravated burglary. The totality of the evidence and testimony adduced on behalf of the State of Ohio was not over-

whelming. In fact, the circumstantial nature of the evidence and testimony adduced against the appellant mandated that the jury be instructed that equal inferences which flowed from the circumstantial evidence adduced at trial must have been resolved in favor of the appellant. Absent such a jury instruction, this court can but find that the appellant was prejudiced by the trial court's failure to instruct on equal inferences.

Therefore, the trial court failed to properly instruct the jury and the appellant's fourth assignment of error is well taken. The appellant's conviction for the offenses of aggravated murder and aggravated arson are hereby vacated and the matter remanded to the trial court for a new trial in conformity with this opinion.

Affirmed in part, reversed in part and remanded for a new trial.

DYKE, J., and McMANAMON, J., concur.