THE STATE OF OHIO, APPELLEE, *v.* SNOWDEN, APPELLANT

(Nos. C-602 and C-603—Decided July 6, 1976.)

Mr. *Robert A. Jones,* prosecuting attorney, for appellee.

Mr. *Milton Berner,* for appellant.

PALMER, J. The defendant, Wendall Asa Snowden, appellant herein, was tried and convicted before a jury on separate offenses of safe-cracking—a violation of R. C. 2911.31—and theft—a violation of R. C. 2913.02. On appeal, with the causes consolidated for purposes of this opinion, he assigns as error common to both trials the admission into evidence of testimony elicited during cross-examination of himself, tending to show the commission of certain criminal acts. The testimony was said by the state to be justified under R. C. 2945.59, which states:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to

show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

## I.

These appeals pose in unavoidable form several complex questions, some of them general in nature relating to the interpretation and intent of the above statute, and others procedural in nature, relating to the manner in which the state attempted to apply the statute in the cases at hand. The former inquiry deserves a most careful treatment inasmuch as the statute under inquiry, R. C. 2945.59, concededly carries the potential for the most virulent kind of prejudice for an accused—that is, the possibility that he may be convicted not so much for what is proven concerning the crime *sub judice*, but for what he is shown to have committed on some other occasion. It is tempting to conclude that once a thief always a thief, but the law has clearly set its face against that too easy solution. *State* v. *Hector* (1969), 19 Ohio St. 2d 167, 174-5.

It is proposed, therefore, first to review and restate the general principles announced by the Supreme Court to guide trial courts in the application of R. C. 2945.59 and, secondly, to apply these principles to the instant facts to determine whether prejudicial error intervened in the admission of evidence of other criminal acts committed by the defendant. Finally, a word is required concerning the trial procedure dictated by the rules circumscribing the use of R. C. 2945.59, and its application to the cases before us.

## II.

An examination of the cases dealing with R. C. 2945.-59, particularly two recent decisions of the Supreme Court of Ohio, *State* v. *Curry* (1975), 43 Ohio St. 2d 66 and *State* v. *Burson* (1974), 38 Ohio St. 2d 157, together with the earlier decision in *State* v. *Hector, supra*, justifies a general observation that the use of the so-called "same and

similar acts" statute[1] is to be severly limited to certain particularized circumstances, the existence of which is to be determined through the application of a specific (if to some extent unarticulated and therefore inferred) methodology. Our reading of these authorities leads us to conclude that the test established for the appropriateness of the statute consists of a two part process: first, an examination to determine the *relevancy* of the other act to the crime in question; next, if that threshhold issue is determined favorably for the state, an inquiry into the succeeding question of whether evidence of the other act is *material* to any issue placed in question by the conduct of the instant trial. The first of these two tests is directed toward the circumstances of the other act sought to be introduced and will generally be satisfied pursuant to the criteria hereafter set forth without specific reference to the particular defenses offered by the defendant as to the charged crime; the test of *materiality*, on the other hand, is dependent upon the issues placed in question by the particular defense offered by the accused.

As to the first of these tests—that of relevancy—we note that in *State* v. *Curry, supra* at 68, Chief Justice O'Neill began his discussion of the case with the observation that:

"[E]vidence which tends to show that an accused has committed another crime wholly independent of the offense for which he is on trial is generally inadmissible."

The court then quoted the language of *State* v. *Burson, supra,* that:

" '[E]vidence of other acts of a defendant is admissible *only* when it "tends to show" one of the matters enumerated in the statute and *only* when it is relevant to proof of the guilt of the defendant of the offense in question.' " (*State* v. *Curry, supra* at 69.)

---

[1] Part of the problem raised by this appeal possibly stems from the erroneous and misleading characterization of R. C. 2945.59 as a statute permitting an inquiry into the "same or similar" acts. That phrase appears nowhere in the section and its use should be discouraged. *State* v. *Burson, supra* at 158.

In *Burson,* the defendant was on trial for first degree murder, and the other act sought to be shown involved an assault four years earlier in a dispute over money, where the defendant administered a beating to the prosecuting witness. The *Burson* court, in holding that the testimony of the beating victim was inadmissible under the statute, stated:

"The other acts of the defendant must have such a *temporal, modal and situational relationship* with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant [material[2]] in showing the defendant acted in the absence of mistake or accident." (Emphasis added.) *State* v. *Burson, supra* at 159.

This threshold test, which we have chosen to denominate a relevancy test as opposed to the more particularized inquiry into materiality, expresses no more than a common sense conclusion that an act too distant in time or too removed in method or type has no permissible probative value to the charged crime. An act of arson, for example, has nothing in common with an otherwise unconnected crime of embezzlement, except perhaps a malevolent spirit; neither would an act of embezzlement removed some 20 years from the embezzlement for which the defendant is undergoing trial, have anything in common with the present charge—nor, arguably, an act of embezzlement so dissimilar in execution from the charged embezzlement that it becomes, in effect, a different crime although proscribed under the same statute.[3] This, we believe, is what the *Burson* court meant by its reference to a "temporal, modal, and situational relationship" between the other act and the charged crime.

[2] It may be conceded that although the distinction in the two tests here adumbrated is clearly discernible in *Curry, Burson* and *Hector,* the actual use of the terms "relevancy" and "materiality" tend to be used indiscriminately in those cases.

[3] We recognize that this alternative basis supporting a determination of irrelevancy is closely akin to certain aspects of the inquiry into materiality, *infra.*

Obviously, it is not possible to predict all of the situations which will resolve the determination as to the relevancy of the other act. The question of temporal relationship, for instance, is clearly one of judgment under the particular facts of the case and is not susceptible to a rigid rule. This much may be ventured, however, with respect to the question of relevancy: it would be difficult for us to perceive the relevancy of the other act to the charged crime unless the former were either the *same* crime, or a lesser included offense within the charged crime, or an offense for which the charged crime is itself a lesser included offense. Thus, another act of aggravated murder may well be relevant (assuming the existence of the other criteria) to a charged crime of aggravated murder, or an act of murder relevant to a charge of aggravated murder, or an act of aggravated murder relevant to a charge of murder, but it is difficult and well nigh impossible to imagine the relevance of an act of embezzlement to a charge of murder.

The second, and more particularized test of admissibility is that of *materiality,* the shoal upon which the state foundered in both *Burson* and *Curry.* Here, the attention shifts from the nature of the other act sought to be introduced, its "temporal, modal and situational" nexus with the charged crime, to the charged crime itself, and the inquiry now addresses itself to the circumstances shown to surround the charged crime and, in particular, to the nature of the defense to that charged crime. As we perceive it, R. C. 2945.59 sets out two categories of circumstance in which evidence of other acts may be material to the charged crime: first, where it is material to show the defendant's "motive or intent, the absence of mistake or accident on his part," and, second, where it is material to show the defendant's "scheme, plan, or system" in doing the act.

As to the first of these tests of materiality, we note, preliminarily, our conclusion that the element of "intent" as envisioned by the statute is specific or "particular" intent (*State* v. *Curry, supra* at 71), rather than the generalized *mens rea* which is an element in all offenses, and that

the phrase "the absence of mistake or accident on his part" is not a separate category but merely a converse of the existence of a specific intent. Thus, in *Curry*, the charged crime of statutory rape carried with it no requirement of specific intent, and no "other acts" testimony would have been admissible as proof of the accused's *intent* to commit statutory rape, or, stating its converse, to negative defenses of mistake or accident. To justify the admissibility of other acts on this basis, an *issue* of particular intent to commit the act would have to be found present in the trial, and this, obviously, was not possible. Again referring to *Curry*, while the crime of *attempted* statutory rape has a particularized intent element (viz., intent to have intercourse), the other act sought to be introduced—indecent liberties—did not share that particular intent element and was therefore, said the court, inadmissible as nonprobative. It stated:

"However, the prosecution's 'other acts' testimony did not tend to prove the intent element of attempted statutory rape." (43 Ohio St. 2d at 71.)

We conclude that only where the defendant specifically places his particularized intent to commit the charged crime in issue, either by directly denying such intent or by asserting accident or mistake, is it material (and therefore admissible) to introduce otherwise relevent evidence of other acts of a similar nature as probative of the issue. Where this element is not a part of the crime (as in statutory rape), where it is not asserted as an issue at trial, or where the other act is not probative of the issue of particular intent, this ground for the admissibility of the evidence is unavailable.

The second test comes into play when the defendant's "scheme, plan or system" in doing an act becomes material. This can occur during trial in either of two ways: either it is material because the other acts form part of the

---

[4]In light of *Curry's* interpretation of the statutory language (compare 43 Ohio St. 2d at 71 with R. C. 2945.59: "any acts of the defendant which *tend to show*"), we have chosen to categorize that which might otherwise appear to be a separate, third, element under the statute—namely, the probative, as a component of materiality.

immediate background of the charged crime, forming part of the foundation thereof (*e. g.*, the theft of a getaway car prior to and in aid of an armed robbery)[5] or, more commonly, where the *identity* of the criminal is placed in issue. As stated by Chief Justice O'Neill in *Curry*:

"Identity of the perpetrator of a crime is the second factual situation in which 'scheme, plan or system' evidence is admissible. One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan, or system was utilized to commit both the offense at issue and the other crimes." (43 Ohio St. 2d at 73.)

Obviously, evidence of a common *modus operandi* between criminal acts is immaterial and inadmissible where the defendant concedes his identity as the actor in question, and defends on some other grounds. A defense of self-defense to a charge of murder, which concedes the question of identity, would thus make evidence of a common scheme, plan or system in an earlier act of homicide inadmissible, although it could well be material (and therefore admissible) as to the issue of particular intent.

### III.

Applying these principles to the causes on appeal, the record reveals that in the trial of defendant for theft, the other acts evidence sought to be introduced concerned an act of safe-cracking. Although a trespassory element in the classic sense is common to both offenses, an inspection of the two statutes reveals marked disparities. Thus, one is guilty of theft where there is a knowing exertion of control over the property of another without authority to do so and with purpose to deprive the owner thereof. R. C. 2913.-02. One is guilty of safecracking, however, by entering a safe with the purpose to commit an offense. R. C. 2911.31. While theft may be the usual offense a safecracker has in

---

[5] This circumstance would constitute an obvious exception to the necessity under the relevancy test that the other act contain elements common to the charged crime.

mind, it need not be; one may violate R. C. 2911. 31 with a purpose to spoliate or destroy the contents, or to affix a spring gun or booby trap, and so on. Here, there was no evidence introduced in the separate trial for theft that the act of safecracking had been with the purpose to commit an offense of theft, or that it had that effect. This being true, there was lacking that identity or substantial identity of elements between the other act and the instant offense which would satisfy the threshold inquiry of relevancy. It follows that the court prejudicially erred in admitting the testimony of the act of safecracking.

In the separate trial for safecracking, where an other act of theft of a car battery was introduced, there was evidence adduced from which the jury could have concluded that the purpose of the safecracking was to commit the offense of theft—viz., to deprive the owner of the contents of a bag of money which had been secreted within the safe. Arguably, therefore, the other act of theft, a felony of the fourth degree, could have been a lesser included offense within the charged crime of safecracking, a felony of the third degree (State v. Nolton [1969], 19 Ohio St. 2d 133), thus satisfying the threshhold inquiry into relevancy.

The problem here, however, is not one of elemental relevancy, but rather of materiality. The record reveals no affirmative defense offered by the defendant; rather, he admitted his presence at the scene of the safecracking and admitted having picked up the bag of money, but denied opening the safe or any purpose to commit an offense. Identity not having been made an issue nor, for that matter, any question of the other act forming part of the background of the safecracking, the other act evidence was immaterial to show scheme, plan, or design.

Also, there was no evidence presented from which a question of accident or mistake could have been inferred to have made the evidence of the other act of theft material to an issue of intent.*

_____

* If it is maintained, notwithstanding the absence of any question in the instant case as to mistake or accident, that the rather anomalous character of the defense to the charge of safecracking (consisting of

Again, we conclude that the court prejudicially erred in admitting testimony of other acts of theft in the trial of the safecracking offense.

## IV.

Finally, we think it appropriate to comment on the method used by the state in attempting to adduce evidence of the other acts in question, since we conclude that it contains, at the least, an inherent potential for prejudice. It seems clear from our analysis of R. C. 2945.59 that it may fairly be characterized as a defensive, or perhaps more accurately as a *counter offensive* weapon in the arsenal of the prosecutor. With the exception of those cases where the other acts are so inextricably interwoven, temporally and circumstantially, with the charged crime that it would not be feasible to demonstrate the latter without evidence of the former, it is apparent that the admissibility of other acts evidence will depend upon the nature of the defense offered. Frequently and perhaps usually this will manifest itself only after the defendant has undertaken his defense, and is doubtless why nearly all of the cases involving this statute that we have had occasion to decide have involved the use of evidence of other acts as *rebuttal* evidence offered by the state after the defense rested. This seems to us its proper role, and that having the least possibility of prejudice, although we do not wish, nor is it necessary for the purposes of this appeal, to rule out its use by the state in chief, where the defense is alibi or affirmative in nature and

what was in effect an assertion that he was an innocent bystander in the admitted events) nevertheless placed in issue the element of the intent to crack a safe with the purpose to commit the offense of theft; his forced admission of a prior act of "aiding to the theft of a car battery" bears at best an extremely tenuous connection with that issue, probably no more considerable than that between intent to commit statutory rape and intent to commit indecent liberties held improper in *Curry, supra.* Other forced admissions of acts of "breaking and entering" and "joy riding" were clearly irrelevant. In none of these instances, it should be repeated, was the "other act" shown to have resulted in a conviction where admissibility of testimony might have been predicated on the issue of credibility. This court's decision in *State v. Linville,* Nos. 586 & 587, Clermont County, unreported, decided May 24, 1976, at pages 4-5, is clearly distinguishable.

clearly manifested (e. g., by discovery techniques) before any evidence is adduced.

Here, no alibi or other affirmative defense was offered or suggested by the defendant in either case, and, properly, no attempt to anticipate any defense was made by the state by attempting to introduce evidence of other acts in chief. However, in the theft trial, following defendant's direct testimony, the prosecutor was permitted to inquire into the defendant's "past record," and the defendant was required to answer questions which showed that he had been "charged for * * * a theft offense," and, among other things, that he was "presently under indictment" for safecracking. In the safecracking trial, the issue was again raised on the cross-examination of the defendant with the question "[h]ave you ever committed the same or similar act for the offense for which you are indicted here today?" He was required to respond to that question and answered affirmatively, reciting "aiding to the theft of a car battery," and adding, under further questioning, a "breaking and entering" on September 11, 1974, and a 1973 vehicular "joy-riding" offense.

The improper form of the questions called for the defendant to draw a legal conclusion as to what constitutes a "same or similar act," a question which courts have had difficulty answering with precision. In addition to obvious Fifth Amendment problems arising from forcing defendants to testify as to other criminal acts for which they have not been convicted, and other procedural problems arising from this procedure, the records here demonstrate clearly the inappositeness of this technique for adducing competent and admissible testimony of other acts under R. C. 2945.59. It is difficult to conceive how the twin questions of relevancy and materiality necessary to qualify this kind of evidence could ever be satisfied out of the mouth of the defendant without insoluble problems intervening.[7]

---

[7]At the very least, if the subject is to be first broached on the defendant's cross-examination, an extensive voir dire out of the hearing of the jury to ascertain the nature of the other acts testimony sought, in order to determine its admissibility, would seem indicated. Cf. R. C. 2907.02(D), (E).

In view of the foregoing, we find the appellant's second assignment of error in case No. 602 and first assignment of error in case No. 603 to be well taken and grant the same.

## V.

The first assignment of error in case No. 602 asserts, in substance, that the court erred in overruling a motion for a continuance where a purportedly critical defense witness had failed to appear in response to a subpoena. Inasmuch as the record at the time of the overruling of the motion contains no indication, or proffer, which might have shown or offered to show how the testimony of the witness was critical, we cannot hold that the trial court abused its discretion in ruling as it did. The assignment of error is without merit and overruled. Similarly, the third assignment of error in case No. 603 asserts that the court erred in permitting a witness to testify where that witness had not been disclosed to the defendant pursuant to his timely request for discovery. While the prosecution's duty to supplement discovery under Crim. R. 16(D) is plain, it cannot be said that the error complained of was prejudicial where the defendant did not claim surprise, and where, on oral argument, he in fact conceded that no surprise was worked upon him. This assignment of error is therefore without merit and overruled.

## VI.

The second assignment of error in case No. C-603 calls into question the propriety of the court's taking judicial notice of an official record under Civ. R. 44, the latter made applicable to criminal proceedings by Crim. R. 27. The gravamen of defendant's argument turns upon the force of the requirement of Civ. R. 44(A)(1) that "a copy attested by the officer having the legal custody of the record, or by his deputy" be *"accompanied by* a certificate that such officer has the custody."* (Emphasis added.) It is uncontested that although a copy of an entry in the Clermont County Court of Common Pleas was indeed certified by a deputy of the clerk of that court, no such *accompanying certificate of custody* was furnished in the case on review. Since the original of the entry was not provided the court, it

is obvious that the document in question could not have been a publication thereof, the state's argument to the contrary notwithstanding. The purport of the rule is plain. The rule was not followed in that a certification of custody was not provided, and the assignment of error is accordingly sustained.

The judgment is reversed and both causes remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

SHANNON, P. J., and KEEFE, J., concur.