THE STATE OF OHIO, APPELLEE, *v.* HILL, APPELLANT.

(No. C-860269 — Decided
June 17, 1987.)

*Arthur M. Ney, Jr.,* prosecuting
attorney, and *William E. Breyer,* for
appellee.
*James M. Rueger* and *Dominic F.
Perrino,* for appellant.

*Per Curiam.* This cause came on
to be heard upon the appeal from the
Court of Common Pleas of Hamilton
County.

Stanley Hill ("appellant") was
jointly indicted with his nephew Tony
Hill ("Tony") on one count of ag-
gravated murder in the death of Carl
Porter ("Porter"). For reasons not of
record, appellant was tried sepa-
rately.[1] The jury returned a verdict of
not guilty on the aggravated murder
charge (R.C. 2903.01) but guilty of the
lesser included offense of murder (R.C.
2903.02). The court sentenced ap-
pellant as of record.

Testimony adduced at trial showed
that on the evening of June 5, 1985, ap-
pellant called Starrett Palmer ("Pal-
mer") and told him to purchase ten
pounds of marijuana from Lonnie
Smith ("Lonnie"). Palmer called Lon-
nie and then went to appellant's resi-
dence where appellant gave him the
money. When Palmer returned to his
apartment to complete the sale with
Lonnie, he was surprised to find ap-
pellant and Tony waiting in the
driveway. Customarily, the buyer and
seller would have intermediaries con-
duct drug transactions to avoid
meeting face to face. Lonnie subse-
quently arrived with his wife, Vera. He
put a large package on the floor in
Palmer's apartment, and as Palmer
went to examine it, appellant appeared
and told him that Tony would inspect
it. Tony rolled a marijuana cigarette,
sampled it, and while shaking his head
pronounced, "This is it." Appellant
asked the disconcerted Lonnie about
the source of the marijuana. Lonnie
declined to answer initially, then gave
a false source, but when appellant en-
couraged him at gunpoint, he iden-
tified Carl Porter. After ordering Lon-
nie to call Porter, appellant informed
the group that someone had deac-
tivated an alarm system at one of his
houses and had stolen five hundred
pounds of marijuana.

Porter arrived at Palmer's apart-
ment a short time later. Appellant
demanded to know from whom Porter
had acquired the marijuana. Porter
responded that he would not reveal his
sources, and as Porter rose from the
arm of the love seat upon which he sat,

---

[1] This court affirmed Tony Hill's con-
viction for aggravated murder in *State* v.
*Hill* (Jun. 18, 1986), Hamilton App. No.
C-850686, unreported.

appellant drew a handgun equipped with a silencer and shot Porter once in the chest. Porter fell to the floor. Palmer and the Smiths fled to other rooms in the apartment. Appellant permitted the Smiths to depart and enlisted Palmer to help dispose of the body. Palmer furnished a blanket in which Porter's body was wrapped, and appellant and Tony placed the body in the trunk of Porter's auto. The Hills followed Palmer, who drove Porter's car a few blocks, and then ordered Palmer to park the car. Palmer declined the Hills' offer of a ride home and left the scene. The body was discovered two days later.

Appellant's first and second assignments of error present the issue of whether the court properly allowed the introduction of appellant's other acts and wrongs. Generally, evidence of other wrongs, acts, or crimes is inadmissible to prove a person's propensity to commit crime. Evid. R. 404(B). However, such evidence is admissible for other purposes within the strictures of R.C. 2945.59, which provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

See, also, Evid. R. 404(B). To be admissible, the evidence must be relevant to some issue of proof of guilt. State v. Hector (1969), 19 Ohio St. 2d

167, 175, 48 O.O. 2d 199, 204, 249 N.E. 2d 912, 917; State v. Snowden (1976), 49 Ohio App. 2d 7, 3 O.O. 3d 92, 359 N.E. 2d 87. The evidence must also be material, and where a defendant's plan or scheme is under scrutiny, evidence which forms the background of the charged crime satisfies the materiality requirement. See State v. Wilkinson (1980), 64 Ohio St. 2d 308, 315-316, 18 O.O. 3d 482, 487, 415 N.E. 2d 261, 268; Snowden, supra, at 12-13, 3 O.O. 3d at 95, 359 N.E. 2d at 92. In such a case, the other acts need not contain elements which are common to the charged crime. Snowden, supra, at 13, 3 O.O. 3d at 95, 359 N.E. 2d at 92, fn. 5 (giving as an example the theft of a getaway car to aid an armed robbery). The evidence may be used to provide the context in which the charged crime occurred.

The state's theory of the case at bar was that appellant killed Porter to avenge a drug theft, and to demonstrate appellant's motive the prosecution elicited testimony of appellant's past drug dealing and details of his lifestyle. Palmer testified that he and appellant, friends since high school, had engaged in prior transactions of large quantities of marijuana. Several witnesses testified that appellant did not have a job of which they knew, but that appellant had houses in many locations, owned some expensive cars and had a variety of handguns and shotguns.

Testimony of appellant's past drug dealing was relevant because it tended to show that appellant was capable of selling large quantities of marijuana and corroborated appellant's explanation to the group on the night of the murder that someone had stolen five hundred pounds of marijuana from him.[2] The testimony was material because it created a framework for con-

---

[2] The case sub judice obviously differs from an instance where a defendant's par-

ticipation in an unrelated arson is raised at a subsequent trial for drug trafficking simp-

sidering whether appellant was motivated by revenge. Further, testimony of appellant's property holdings did not demonstrate any inherent criminal activity but did indicate that he lived in a lifestyle beyond his legitimate means. All of the testimony was admissible because it underpinned the prosecution's theory of appellant's motive and plan for the crime with which he was charged, and plainly it was not offered to demonstrate his propensity for criminal activity. See *Wilkinson, supra,* at 316, 18 O.O. 3d at 487, 415 N.E. 2d at 268; see, also, *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 73, 72 O.O. 2d 37, 41, 330 N.E. 2d 720, 725. We therefore overrule the first and second assignments of error.

In the third assignment of error, appellant argues that the court erred because it did not instruct the jury concerning the limited purpose for which the jury could consider prior-act testimony. However, appellant failed to file a written request for a special instruction. See Crim. R. 30(A). We find that our reasoning in *State* v. *Sanders* (Jan. 16, 1985), Hamilton App. No. C-840186, unreported, is dispositive of this assignment of error:

"We cannot give credit to this claim because the record demonstrates that there was neither an objection to the charge as given nor a written request for a special instruction, Crim. R. 30(A); *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, 437 N.E. 2d 583, and because it is our view that the circumstances do not dictate a finding of plain error under the rationale of *State* v. *Long* (1978), 53 Ohio St. 2d 91, 372 N.E. 2d 804." *Id.* at 5.

Appellant next contends that the verdict was against the manifest weight of the evidence. Our review of the record leads us to conclude that the jury clearly did not lose its way so as to create a manifest miscarriage of justice. *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717. The assignment of error lacks merit.

In the fifth assignment of error, appellant remonstrates that the trial court, contrary to the motion *in limine* which the court granted, allowed the prosecution to elicit testimony about Tony Hill's trial and appellant's federal case. A grant of a motion *in limine* does not determine the admissibility of the evidence under consideration, but instead suspends questions about the subject until the court can determine under the circumstances whether the evidence would be admissible. See *State* v. *Grubb* (1986), 28 Ohio St. 3d 199, 28 OBR 285, 503 N.E. 2d 142. The grant is interlocutory, malleable in the discretion of the trial court.

Appellant's counsel cross-examined prosecution witnesses about inconsistencies in their testimony in the cause *sub judice* as compared to their testimony in Tony Hill's trial. Additionally, counsel questioned appellant about the guns, drugs and drug paraphernalia which were the subjects of his federal trial. Appellant cannot now assign error with respect to matters which he himself injected into the trial. See *State* v. *Woodruff* (1983), 10 Ohio App. 3d 326, 10 OBR 532, 462 N.E. 2d 457. The fifth assignment of error is feckless.

The sixth assignment of error is that the court erred in permitting one of the prosecution's witnesses to testify about a polygraph examination and in permitting the prosecution to com-

---

ly to show the defendant's bad character, as well as a situation where a defendant's involvement in prior arsons is raised at a subsequent arson trial to demonstrate the defendant's propensity to commit arson. See, *e.g., State* v. *Bolden* (Oct. 22, 1986), Hamilton App. No. C-860053, unreported.

76

ment on the polygraph during closing argument. Generally, results of a polygraph test are inadmissible, absent an agreement between the parties. *State v. Souel* (1978), 53 Ohio St. 2d 123, 7 O.O. 3d 207, 372 N.E. 2d 1318. No agreement was made in the instant case.

Under cross-examination by appellant's attorney, Lonnie Smith volunteered that he had taken a polygraph test. Appellant's counsel continued questioning Lonnie about the polygraph exam. The prosecution was unaware of Smith's polygraph until he mentioned it to defense counsel during cross-examination. In closing argument, the prosecutor made a comment which implied that Smith had passed the polygraph test. Appellant's counsel objected, and the trial court immediately instructed the jury that the polygraph was inadmissible. The court rectified any impropriety with its instruction. Appellant cannot claim error because his counsel elicited Lonnie's statements about his polygraph exam, and any error was invited. *Woodruff, supra.*

In the seventh and final assignment of error, appellant alleges that the court erred in not ordering production of the questions asked and answers given during the polygraph examination. Appellant's allegation is erroneous for two reasons. First, because the parties did not agree in advance that the polygraph exam would be admissible, the exam was inadmissible for any purpose. *Souel, supra.* Second, the prosecution could not find a tangible record of the questions and answers; nothing was available to discover. *State* v. *Davis* (Feb. 11, 1987), Hamilton App. Nos. C-860309, C-860321 and C-860504, unreported; *State* v. *Sampson* (1982), 4 Ohio App. 3d 287, 4 OBR 536, 448 N.E. 2d 467; Crim. R. 16(B). The seventh assignment of error is overruled.

Finding no error in the proceedings below, we accordingly affirm the judgment of the trial court.

*Judgment affirmed.*

SHANNON, P.J., BLACK and HILDEBRANDT, JJ., concur.