JOURNAL ENTRY AND OPINION
Defendant Maurice Lloyd appeals from his convictions for child endangering and domestic violence. For the reasons set forth below, we affirm defendant's conviction, reverse a portion of his sentence, and remand the matter for further proceedings consistent with this opinion.
On June 15, 2000, defendant was indicted pursuant to a five count indictment in connection with an incident which occurred on June 1, 2000. Count One charged defendant with felonious assault on his five-year-old child. Count Two charged defendant with endangering his five-year-old child in violation of R.C. 2919.22(B)(2), a felony of the third degree. Count Three charged defendant with endangering his two-month-old child, in violation of R.C. 2919.22(A), a misdemeanor of the first degree. Count Four charged defendant with felonious assault upon Aminika Braddy with a firearm and also contained a firearm specification. Count Five charged defendant with domestic violence upon Aminika Braddy in violation of R.C. 2919.25, with a furthermore specification that alleged that defendant had previously been convicted of domestic violence in November 1996, and therefore charged defendant with a fifth degree felony.[1]
Defendant pleaded not guilty to the charges. Thereafter, the state amended Count Two to assert a violation of R.C. 2919.22(B)(3),[2] and amended Count Four to charge defendant with causing physical harm with a gun and to delete the firearm specification.
The matter proceeded to a jury trial on September 25, 2000. The state presented the testimony of Aminika Braddy, defendant's girlfriend and the mother of his children, and Cleveland Police Officers Magdaelena Massa, Michael Donegan, Anthony Spencer, Steven Zeisel, and Georgia Hussein.
Aminika Braddy testified that she and defendant lived at 11201 Mount Carmel Road and have three children. On June 1, 2000, the five-year-old boy had diarrhea and had soiled himself and the bathroom. As Braddy was cleaning the area, defendant awoke and began to beat the child. Defendant then picked the child up by the neck and held him against the wall in a strangling position. Braddy intervened and pried defendant's fingers from the boy's throat. She then resumed cleaning.
Braddy further testified that defendant then went outside and obtained a tree branch. He wrapped tape around the branch and beat the child about his head and body. Braddy intervened and talked to defendant to calm him. Braddy gave the child a bath then briefly left the bathroom to get fresh clothes for him. When she returned she observed defendant pushing the boy's head underwater and the child struggling to come up. Braddy grabbed the child from the tub and dressed him. She later engaged in normal activities around the apartment as she waited for an opportunity to go upstairs and call the police.
Braddy further testified that defendant started an argument with her later that day about some jewelry which she could not find. According to Braddy, defendant ransacked the apartment, hit her in the face and head, then struck her with his gun.
She then ran to her mother's apartment upstairs and called the police. When she returned, she realized that defendant had fled and had taken their two-month-old son. The police responded promptly and she provided them with a description of defendant and told them that he had the baby.
Defendant returned later that evening but would not give Braddy the baby. He left and returned approximately one hour later. Braddy stated that defendant appeared intoxicated and she spoke to him calmly, hoping that he would give her the baby. While defendant sat outside, she quickly ran upstairs and called the police to let them know that defendant and the baby were now at the apartment.
Cleveland Police Officers Massa, Donegan, Spencer and Zeisel established that after receiving Braddy's initial report, they looked for defendant throughout the evening while responding to other calls. At approximately 10:15 p.m., they received a call informing them that defendant was at the apartment and they returned there to apprehend him. The officers established that defendant fled with the child but then dropped the child onto a driveway. According to Massa, broken glass littered the driveway, and a small dog bit her as she picked up the infant. Finally, the officers established that defendant was belligerent and non-compliant, and they eventually maced him. He had a gun but the officers later learned that the gun did not have a firing pin and was therefore inoperable. Defendant was injured in his struggle with the officers and they called an ambulance for him. He spit at them in the ambulance and was further restrained. Defendant eventually became remorseful and reportedly told the officers that he had smoked wet.
Cleveland Police Detective Georgia Hussein testified that she met with Braddy on June 3, 2000, and at this time Braddy disclosed to police for the first time that defendant had beaten the five-year-old prior to her initial call to the police on June 1, 2000. Hussein subsequently observed marks on the boy's head, stomach and arms and the boy was then photographed by police.
Finally, photographs of the child depicting welt marks over his body were introduced into evidence and the state and the defense stipulated that defendant was convicted of domestic violence in 1996 in Cleveland Municipal Court.
Defendant testified on his own behalf. He admitted that he had previously been convicted of aggravated robbery. He received probation for this offense but later violated the terms of his probation. The next year, he was convicted of domestic violence in connection with an argument with his mother and he received shock probation. He claimed that he was later stabbed by Braddy and that as a result of this stabbing, he has paralysis in his left arm. Defendant further admitted that in 1996, he was convicted of assault on a police officer and he received a three year sentence. Following his release, he and Braddy had another altercation during which she stabbed him in the back.
Defendant testified that he bought the gun, knowing that it did not work, because he had problems with Braddy's family.
With regard to the events of June 1, 2000, defendant testified that at approximately 9:15 a.m., while he was in bed holding their infant, he heard Braddy shouting at the five-year-old for having an accident. Defendant got up to see what was happening and he observed that the boy had soiled himself, his room, and the bathroom and Braddy was beating the boy. Defendant stated that he shouted at the boy and Braddy asked for a switch because she was tired of breaking her nails on him. Defendant got her a switch and Braddy wrapped it with electrical tape then defendant beat him on his legs.
Defendant further testified that Braddy soiled her hands and became angry at the boy again. Braddy beat the boy with the switch, then struck defendant with it before defendant threw it into the garbage. Defendant denied choking the boy and denied holding his head underwater as the boy bathed.
Defendant admitted that later in the day, he asked Braddy where her jewelry was and this escalated into an argument. Defendant denied striking Braddy with the gun and claimed that after Braddy ran upstairs to her mother's apartment, he got the gun and left with the infant. Defendant returned home later, but Braddy was still belligerent so he left. When he returned later, they spoke normally but the police abruptly arrived and defendant ran because he was afraid. He further stated that he stopped running and placed the baby on the ground then continued to flee from police. Defendant stated that Officer Spencer tackled him and struck him. The other officers maced him and fought with him as he lay on the ground.
Defendant was subsequently acquitted of both counts of felonious assault, convicted of both counts of endangering children, and convicted of the domestic violence charge and the furthermore specification. In a written sentencing entry, the trial court determined that defendant lacked remorse, had failed to take responsibility for his actions, had served a prior prison term, and had violated probation and parole. The court found that defendant was not amenable to community control, that he had committed one of the worst forms of child endangering, that he posed a great risk of committing future offenses, that consecutive sentences were necessary to protect the public and to punish the defendant, and that the sentence was not disproportionate to the seriousness of his conduct and the danger to the public. The court then sentenced defendant to five years incarceration on Count Two, stemming from the incident involving defendant's five-year-old child, one hundred twenty days incarceration on Count Three, stemming from the incident involving the two-month-old child, with credit for time served, thus completing this term of incarceration, and one year incarceration on Count Five, the domestic violence charge. The trial court further ordered the sentence for Count Five be served consecutive to the sentence ordered for Count Two. Defendant now appeals and assigns five errors for our review.
Defendant's first assignment of error states:
 APPELLANT'S CONVICTION OF CHILD ENDANGERING PURSUANT TO R.C. 2919.22(B) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THERE WAS NO EVIDENCE THAT THE DISCIPLINE CARRIED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM.
Within this assignment of error, defendant contends that his conviction for endangering his five-year-old child is not supported by sufficient evidence. Defendant maintains that the evidence that he choked the five-year-old and held his head under water does not carry a substantial risk of serious physical harm.
In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jackson (2001), 92 Ohio St.3d 436, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
The elements of child endangering are set forth in R.C. 2919.22(B). Pursuant to this statute, no person shall "administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]" The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children. State v. O'Brien (1987),30 Ohio St.3d 122, paragraph one of the syllabus.
"Serious physical harm to persons" is defined in the Revised Code as follows:
 "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 "(b) Any physical harm that carries a substantial risk of death;
 "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
See R.C. 2901.01(A)(5).
In this instance, the evidence presented by the state indicated that defendant beat the five-year-old about his head, back and stomach with a tape covered switch for having an accident and soiling the house. The state further demonstrated that in the course of the beating, defendant held the child up against the wall in a choking position then held the child's head under water. In both instances, the child's mother had to intervene. From this evidence, a rational trier of fact could have found, beyond a reasonable doubt, that defendant's actions were reckless, excessive under the circumstances, and created a substantial risk of serious physical harm to the child. Accordingly, we reject defendant's claim that his conviction for this offense is unsupported by sufficient evidence.
This assignment of error is without merit.
Defendant's second assignment of error states:
 THE TRIAL COURT ERRED IN ALLOWING THE STATE TO OFFER UNFAIRLY PREJUDICIAL OTHER ACTS TESTIMONY REGARDING APPELLANT'S CONDUCT DURING HIS ARREST AND AFTER HIS ARREST.
Defendant next asserts that the trial court erred in permitting the state to introduce evidence that he was combative and violent as the police arrested him.
Evidence of other acts is not admissible to show that the accused acted in conformity with his other acts or that he has a propensity to act in such manner. See State v. Smith (1990), 49 Ohio St.3d 182. However, in certain limited exceptions, evidence of other acts may show proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).
To determine the relevancy of "other acts" evidence, the trial court looks to the temporal, modal, and situational relationship between the other act and the crime at issue. State v. Snowden (1976),49 Ohio App.2d 7.
Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
The trial court is vested with discretion to undertaking this weighing process and it is axiomatic that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. See, also, State v. Bey (1999), 85 Ohio St.3d 487, 490.
An abuse of discretion in relation to the admission of such evidence was found in State v. Renner (1998), 125 Ohio App.3d 383, 391. The Renner Court determined that evidence that the defendant was intoxicated and belligerent was not admissible to show that he committed felonious assault.
In this instance, however, the evidence was relevant to Count Three, pertaining to the state's charge that defendant endangered the two-month-old, since this evidence tended to show that defendant's actions were intentional and that he did not accidentally drop the child. Further, on cross-examination of Officer Massa, defense counsel "opened the door" to the admission of evidence of these other acts by questioning her about the fact that defendant had to be hospitalized following his arrest. The state therefore properly presented evidence of defendant's combativeness at this time, in order to present a full explanation of defendant's condition.[3]
In accordance with the foregoing, we are unable to conclude that the trial court abused its discretion in relation to the introduction of this evidence.
Defendant's third assignment of error states:
 APPELLANT'S CONVICTION FOR CHILD ENDANGERING PURSUANT TO R.C. 2919.22(B)(3) MUST BE REVERSED BECAUSE IT IS AGAINST THE WEIGHT OF THE EVIDENCE.
Here, defendant asserts that his conviction for child endangering stemming from his actions in relation to the five-year-old is contrary to the manifest weight of the evidence.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court set forth the role of an appellate court in determining whether a judgment is against the manifest weight of the evidence:
 When a court of appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982), 457 U.S. 31,] at 42, 102 S.Ct at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should only be granted in the exceptional case in which the evidence weighs heavily against the conviction.)
Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Applying the foregoing to this matter, we cannot conclude that the jury lost its way in convicting defendant of endangering his five-year-old son. The evidence presented by the state was credible, consistent, and clearly demonstrated that defendant beat the child severely, on his back, stomach, and head after the child had an accident. The state also presented certain, consistent evidence that defendant held the child in a choking manner and later held the child's head under water as the boy bathed. The state demonstrated that defendant was combative throughout the entire day. Defendant's version of events was less reliable, and at times, vague and illogical.
This assignment of error is therefore without merit.
Defendant's fourth assignment of error states:
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MAXIMUM, CONSECUTIVE TERMS OF INCARCERATION WHERE THE RECORD DOES NOT SUPPORT THE SENTENCE.
Defendant next asserts that the record does not support the trial court's findings in the matter.
The imposition of maximum sentences is governed by Revised Code section2929.14(C) which provides:
 The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, * * * *.
The imposition of consecutive sentences is governed by R.C.2929.14(E)(4) which states in relevant part:
 (E)(4) If multiple prison terms are imposed upon an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and if the court also finds any of the following:
* * *
 (b) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.
* * *
In this instance, the trial court determined, inter alia, that defendant had committed one of the worst forms of child endangering, that he posed a great risk of committing future offenses, that consecutive sentences were necessary to protect the public and to punish the defendant, and that the sentence was not disproportionate to the seriousness of his conduct and the danger to the public.
The record demonstrates that the boy had many welt marks about his head and that he was also beaten on his back and stomach. The record also supports the court's conclusion that defendant choked the child and also held his head underwater. It cannot be seriously disputed that this conduct constitutes extremely serious and dangerous conduct. The record also demonstrates that defendant has a history of criminal conduct and that he has offended while on shock probation and parole. Accordingly, our examination of the record does not undermine the trial court's conclusions herein and we find no error with respect to the sentence imposed herein.
Defendant's fifth assignment of error states:
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A JAIL TERM FOR A MISDEMEANOR CONVICTION SET TO RUN CONSECUTIVELY TO TERMS OF INCARCERATION FOR FELONY CONVICTIONS.
Here, defendant asserts that the trial court erred in imposing a consecutive sentence for his misdemeanor child endangering conviction.
 Pursuant to R.C. 2929.41, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment imposed by a court of this state except under circumstances not pertinent herein. In accordance with this provision, the trial court does not have discretion to impose consecutive sentences; it is mandatory that the sentence for the misdemeanor be served concurrently with the felony. State v. Copeland (1989), 60 Ohio App.3d 111. The Copeland court stated:
 We are supported in such view by the Committee Comment to House Bill No. 511, set forth in an annotation following R.C. 2929.41, reading as follows:
 "A misdemeanor sentence is always served concurrently with a penitentiary or reformatory sentence for felony. Two or more felony sentences are served concurrently unless the court specifies that they are consecutive * * *." (Emphasis added.)
 It is our conclusion that the legislature has seen fit to make it mandatory that a sentence of imprisonment for a misdemeanor be served concurrently with a sentence of imprisonment for felony.
In this instance, the trial court sentenced defendant to one hundred twenty days incarceration on Count Three, stemming from the incident involving the two-month-old child but gave defendant credit for time served. The felony sentences immediately followed, thus rendering them consecutive to the misdemeanor sentence, in violation of R.C. 2929.14. Moreover, although the trial court ordered that defendant receive credit for time served for this offense, we do not find this assignment of error to be moot, in that the this confinement period could have been used to offset the felony sentences ordered in this instance.
This assignment of error is well-taken and this portion of defendant's sentence is hereby reversed. This matter is hereby remanded for re-sentencing in accordance with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., AND TERRENCE O'DONNELL, J., CONCUR.
[1] Defendant was also indicted, in case no. 394084, for carrying a concealed weapon but this matter was dismissed by the state prior to trial.
[2] This provision concerns the administration of corporal punishment and provides:
 (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
* * *
 (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]
[3] Defendant's statements regarding his drug use were an admission by a party opponent, which were admissible under Evid.R. 801(D)(2).