JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Lawrence Royster (appellant) appeals his convictions for aggravated robbery in violation of R.C. 2911.01 and complicity in the commission of aggravated arson in violation of R.C.2909.02 and 2923.03. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On January 9, 2003 at approximately 7:00 p.m., the Cleveland Fire Department responded to a call at appellant's house, 2168 Green Road. When Detective Kovacic arrived at the scene, the fire was centered in a downstairs bedroom. Upon entering the bedroom to extinguish the fire, Detective Kovacic found the burned body of Kenyard Drake (the victim) lying face down on the bed. An autopsy was performed at the Cuyahoga County coroner's office, which determined that the cause of death was a single .38 caliber bullet to the back of the victim's head. The time of death was estimated to be 20 to 24 hours before the victim was found in the fire, based on decomposition of the body at the time of the autopsy. The fire investigation unit recovered discharged .38 caliber bullets from the bedroom of appellant's house.
 {¶ 3} Lieutenant Albert Lugo, a Cleveland Fire Department investigator, determined that the fire was purposefully set because it had four areas of origin and began from a flammable liquid poured in the bedroom. Lieutenant Lugo also determined that the victim's burns showed he was directly in the middle of the "pour pattern."[1]
 {¶ 4} The victim was the cousin of appellant's wife and had been staying at appellant's house since late October or early November 2002, when appellant's wife and children moved out. The victim was a drug dealer who supplied drugs to appellant in exchange for appellant acting as the victim's "doorman."[2] Dennis Williams (Williams) knew the victim and appellant through the streets and their drug involvement, and he described appellant as "[s]omebody who would do anything to get dope for another person, somebody who will belittle themselves for another person,"[3] especially in his relationship with the victim.
 {¶ 5} Williams was with appellant at appellant's house the night the victim died. Williams testified that he and appellant were smoking crack cocaine at approximately 11:00 p.m. on January 8, 2003, while the victim was asleep in his bedroom. When appellant and Williams ran out of drugs, appellant suggested they kill the victim, then steal the nine ounces of crack cocaine and the $25,000 the victim had in his bedroom. Williams refused and continued to play a video game. Williams testified that he heard a shot and appellant came out of the bedroom with a .38 caliber gun in his hand. A short time later, appellant went back into the bedroom and came out with a silver safety box containing the victim's drugs and money. The next morning, appellant gave Williams approximately $1,000 and Williams left appellant's house. Appellant called Williams at his house several times throughout the day to discuss disposing the body.[4]
Williams testified that because of the victim's large size,[5] they decided to burn down the house. Appellant told Williams he had to watch his children while his wife was at a doctor's appointment that evening and he would leave a key for Williams. At approximately 5:00 p.m. on January 9, appellant left the house with his wife. Around 6:00 p.m., Williams went to a gas station and purchased 50 cents worth of gasoline, which he put in a gallon milk jug.[6] Shortly before 7:00 p.m., Williams poured the gasoline near the front and side doors and in the kitchen and downstairs bedroom of appellant's house. He lit the gasoline with a book of matches and left.
 {¶ 6} Appellant testified in his own defense that the victim returned to appellant's house between 6:00 and 8:00 p.m. on January 8, 2003. Appellant stated he left his house to get cigarettes and when he came back, Williams, who was also at the house, told him that the victim had left. Appellant testified he remained at his house until 5:00 p.m. the next day, when he left with his wife and children. After the doctor's appointment, the Roysters went to appellant's grandmother's house, where they learned that appellant's house was on fire. Appellant and his family returned to their house where they discovered Cleveland police officers and firefighters already on the scene. Appellant told Detective Kovacic that he left his house at 5:00 p.m. that evening and the victim was not home at that time. He claimed the last time he saw the victim was at 1:30 a.m. on January 9, 2003.
 {¶ 7} On January 22, 2003, a Cuyahoga County grand jury indicted appellant on two counts of aggravated murder with felony murder and firearm specifications in violation of R.C. 2903.01; two counts of aggravated arson with firearm specifications in violation of R.C. 2909.02; one count of aggravated robbery with firearm specifications in violation of R.C. 2911.01; one count of intimidation in violation of R.C. 2921.04; and one count of complicity in the commission of aggravated arson in violation of R.C. 2909.02 and 2923.03. Co-defendant Williams was also indicted for numerous similar charges. On June 2, 2003, Williams pled guilty to involuntary manslaughter, aggravated robbery and aggravated arson.
 {¶ 8} Appellant pled not guilty, and his case proceeded to a jury trial beginning on August 11, 2003. On August 23, 2003, the jury found appellant guilty of aggravated robbery and complicity in the commission of arson, both felonies of the first degree. The court sentenced appellant on September 30, 2003 to a five-year term of community control sanctions and an in-patient drug rehabilitation program with aftercare.
 II. {¶ 9} In appellant's first assignment of error, he argues "the trial court erred in admitting evidence of prior bad acts by appellant as character evidence." Specifically, appellant asserts the court allowed testimony regarding appellant's illegal drug activities, in violation of Evid.R. 404(B) and R.C. 2945.59. Evid.R. 404(B) provides as follows:
"Evidence of other crimes, wrongs, or acts is not admissible to provethe character of a person in order to show that he acted in conformitytherewith. It may, however, be admissible for other purposes, such asproof of motive, opportunity, intent, preparation, plan, knowledge,identity, or absence of mistake or accident."
 {¶ 10} Similarly, R.C. 2945.59 states in part, "* * * any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved * * *" when these acts are material to the case at hand. However, the state may not introduce evidence of a defendant's prior bad crimes or acts independent of the offense for which he is on trial solely to prove the defendant has a propensity for committing bad crimes or acts. See State v. Mann (1985),19 Ohio St.3d 34.
 {¶ 11} In the instant case, the state elicited testimony from Williams regarding appellant's relationship with the victim in the context of past and current drug transactions. The court sustained appellant's objection to testimony regarding his previous drug dealing, but allowed testimony that appellant acted as the victim's doorman during the time surrounding the victim's death. Appellant argues this entire line of questioning is irrelevant. However, the state argues that this evidence shows appellant's motive to commit the crimes in question. According to the state, Williams' testimony regarding appellant's drug related activities relates "to the nature of the association between the witness and the defendant. In addition to that, the whole context of this particular case is that the defendant is involved in a drug enterprise, whether his role or status on the day of the homicide was to be the doorman * * *."[7]
 {¶ 12} Appellant also asserts that his wife's testimony regarding his drug dealing was irrelevant and thus improper. Specifically, appellant seeks to distinguish between his drug use, which he admits was properly allowed at trial, and his drug dealing, which he claims was irrelevant to the charges against him. The state maintains it was trying to establish the criminal association that provided the motive and opportunity for appellant to commit the crimes in question. The extent of his wife's testimony during cross-examination regarding appellant's drug dealing is as follows:
{¶ 13} "Q. Now, during that same time frame was Lawrence sellingdrugs?
 {¶ 14} "A. Yeah. Off and on.
 {¶ 15} "Q. And what kind of drugs was he selling off and on?
 {¶ 16} "A. Crack, heroine. [sic]
 {¶ 17} "Q. Crack and heroine? [sic]
 {¶ 18} "A. Yes, sir.
 {¶ 19} "Q. And was he successful in selling drugs?
 {¶ 20} "A. Majority of the time.
 {¶ 21} "Q. He was making money, wasn't he?
 {¶ 22} "A. Yes."[8]
 {¶ 23} We find this testimony was properly admitted for at least two reasons. First, the fact that appellant, who at one time was successful selling drugs, was serving as the victim's doorman at the time of the victim's death may go toward appellant's motive to steal from and kill the victim. Second, appellant was also charged with intimidating Williams, and the fact that appellant was once higher-up in the drug chain may have afforded him the opportunity to intimidate another. AccordState v. Bobo (1989), 65 Ohio App.3d 685, 692-93 (ruling that "evidence of a defendant's activities in drug transactions is admissible in a murder trial to demonstrate that the defendant killed the victim to avenge theft of drug money") and State v. Hill (1987), 37 Ohio App.3d 72,74 (holding that testimony of appellant's past drug dealing and the details of his life-style was admissible because it "underpinned the prosecution's theory of appellant's motive and plan for the crime with which he was charged").
 {¶ 24} Appellant's first assignment of error is overruled.
 III. {¶ 25} In his second assignment of error, appellant argues "the trial court erred in failing to grant appellant's motion for a mistrial based on the admission fo [sic] evidence of appellant's drug dealing." Specifically, appellant argues the jury was tainted by the irrelevant evidence referring to his drug dealing activities. Whether to grant a motion for mistrial is within the discretion of the trial court. Crim.R. 33; State v. Sage (1987), 31 Ohio St.3d 173. The Ohio Supreme Court stated, "[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin
(1991), 62 Ohio St.3d 118, 127. In the instant case, appellant moved for a mistrial twice when the court allowed the prosecutor to continue with testimony regarding his drug dealing despite his objections. Because we concluded that evidence regarding appellant's drug dealing was properly admitted at trial, we also conclude that this evidence did not taint or influence the jury so as to deny a fair trial.
 {¶ 26} Appellant's second assignment of error is overruled.
 IV. {¶ 27} In his third and final assignment of error, appellant argues his "conviction for complicity to commit arson and aggravated robbery was against the manifest weight of the evidence." The proper test for an appellate court reviewing the manifest weight of the evidence is as follows:
"The court, reviewing the entire record, weighs the evidence and allthe reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered."
 {¶ 28} State v. Martin (1983), 20 Ohio App.3d 172, 175. The trier of fact is entitled to believe or disbelieve the witness' testimony. A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction. State v. Thompkins (1997),78 Ohio St.3d 380. See also State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 29} In the instant case, appellant asserts that because he was acquitted of aggravated murder, the jury must have rejected Williams' testimony in its entirety and there was no evidence left with which to convict him of the other charges. However, a jury "may believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964), 176 Ohio St. 61, 67. Appellant was convicted of complicity in the commission of aggravated arson. Williams confessed to lighting the fire at appellant's house and then testified that he and appellant planned to dispose of the victim's body by burning down appellant's house. Evidence was presented at trial showing 34 telephone calls between appellant and Williams on the day of the fire. Additionally, appellant testified that at the time his house was set on fire he had stopped paying his mortgage and he knew the house was not going to be his much longer. Appellant's conviction as an accomplice to aggravated arson is not against the manifest weight of the evidence.
 {¶ 30} Appellant was also convicted of aggravated robbery. According to the record, appellant came out of the victim's bedroom with a gun in his hand immediately after Williams heard a shot. Williams testified that appellant "came out of the room so fast he left the drugs and the money in the room. After he calmed down a little bit he * * * retrieved the drugs and the money and came back out."[9] Williams further testified that the second time appellant came out of the victim's bedroom, he had a halffull freezer bag of drugs and three large stacks of money inside a silver safety box. Before Williams went home in the early morning hours of January 9, appellant gave him approximately $1,000 in cash. It cannot be said that the jury lost its way in finding appellant guilty of aggravated robbery; therefore, appellant's third assignment of error is overruled.
 V. {¶ 31} Appellee asserts two cross-assignments of error, arguing first that "the trial court erred in failing to adequately answer a written question by the jury submitted during the course of their deliberations." Specifically, the state refers to a question the jury submitted to the court on August 23, 2003, asking in relation to the second count of aggravated murder, "Does the Defendant have to be the person who actually pulled the trigger and killed the victim or could he have just been there participating in the robbery/arson and another person pulled the trigger and killed the the victim?"[10] In response to this question, the court stated, "[a]t this time, please refer to the entire charge provided to the jury at the time you retired to deliberate."[11] The jury was instructed to deliberate about complicity only in relation to aggravated arson. Before the court charged the jury, it afforded both parties an opportunity to object to the jury instructions and no pertinent objections were noted. It was only after the jury question arose that the state argued the jury instructions were defective in that the complicity charge should have applied to all counts in the indictment.
 {¶ 32} If a party does not object to a jury instruction during trial, all but plain error regarding that instruction is waived. See State v.Hartman (2001), 93 Ohio St.3d 274, 289. Additionally, in State v. Carter
(1995), 72 Ohio St.3d 545, the court held that it is within a trial court's discretion to refer back to the written jury instructions when the jury asks for clarification. Pursuant to Crim.R. 52(B), plain errors are errors "affecting substantial rights [which] may be noticed although they were not brought to the attention of the court." However, plain errors are to be recognized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."City of Cleveland v. Rhoades (July 29, 1999), Cuyahoga App. No. 74572.
 {¶ 33} In the instant case, the court was within its discretion when it referred the jury back to the written instructions on the complicity question. In addition, the state did not object to the jury instructions until after it waived that right. Appellee does not point to, nor do we see, the manifest miscarriage of justice amounting to plain error. Appellee's first cross-assignment of error is overruled.
 VI. {¶ 34} Appellee's second and final assignment of error claims "the trial court erred in failing to make a finding giving reasons for a community control sanction." Specifically, appellee argues that R.C.2929.13(D) provides for a presumption of incarceration for first-degree felony violations, and in this case, although appellant was convicted of two first-degree felonies, the court opted for community control sanctions and drug rehabilitation in lieu of imprisonment. According to R.C. 2929.13(D)(1) and (2), the court may overcome the presumption of imprisonment if they find that community control sanctions would "adequately punish the offender and protect the public from future crime" and "not demean the seriousness of the offense." Appellee is correct in stating the sentencing statute in question guides the court with a presumption, rather than a requirement, of incarceration. Given this, the record shows that the court made the appropriate findings and listed the reasoning behind those findings when sentencing appellant.
 {¶ 35} The court made the following findings on the record:
"The defendant has no history of criminal or delinquent behavior. Thedefendant has been incarcerated for 262 days. A community controlsanction would adequately punish the defendant and protect the publicfrom future crime by him. As based upon his lack of criminal record,there is an unlikelihood of recidivism with this particular defendant. Acommunity control sanction would not demean the seriousness of theoffenses for which the defendant was found to be guilty, because one ormore of the factors under 2929.12 indicate that the defendant's conductwas less serious than conduct normally constituting the offense* * *."[12]
 {¶ 36} The court also noted the seriousness of appellant's drug problem, and taking all of these factors into consideration, determined that if appellant underwent and benefitted from the appropriate substance abuse treatment, continued his education and obtained employment, he would be able to turn his life around. Accordingly, we find that the court did not err in sentencing appellant to community control sanctions and appellee's second cross-assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee and appellant shall each pay their respective costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Cooney, J., concur.
[1] Tr. at 1219. Lieutenant Lugo testified that a "pour pattern" is an unusual pattern of uneven burning which was found on the bedroom carpeting at appellant's house and can be used as evidence that the fire was intentionally set. Id.
[2] Tr. at 1839-40. One of the victim's girlfriends, Tiara White, testified that a doorman's job is to open the door at the house where drugs are sold. She additionally testified that when appellant acted as doorman at his own house for the victim's drug transactions, he would sometimes carry a .38 caliber firearm for protection. "Sometimes Lawrence had it. Sometimes Kenyard had it. * * * You never know who's on the outside of the door or what their intentions are." Id. at 1838-40.
[3] Tr. at 1407.
[4] Appellant and Williams' home telephone records show 34 calls between the two residences on January 9, 2003. Tr. at 2146.
[5] The victim was 5'6" tall and weighed 342 pounds.
[6] The gas station's surveillance camera taped Williams purchasing the gasoline in a milk jug. This video tape was used as evidence at trial. Additionally, during their investigation, the Cleveland Fire Department found the milk jug at appellant's house.
[7] Tr. at 1607.
[8] Tr. at 2496.
[9] Tr. at 1408-09.
[10] Tr. at 2973.
[11] Tr. at 2977.
[12] Tr. at 2996-97.