OPINION
{¶ 1} Virsna Sieng appeals from his conviction of assault from the Clark County Municipal Court after a bench trial. Sieng represented himself at the trial. The victim of the assault was nineteen year old, Dallas Huffman.
 {¶ 2} Ms. Huffman's mother, Tracey Huffman, testified that her daughter had been dating the defendant for about two years preceding the incident giving rise to the assault. Tracey Huffman testified that she lived in an apartment with her boyfriend Michael Sims and her daughter, Dallas, and her child.
 {¶ 3} Ms. Huffman testified that in the early morning hours of January 26, 2003, she heard the defendant and her daughter, Dallas, arguing outside the apartment. She said she went to the window and "either he threw a bottle at her or she threw a bottle at him "but she . . . was trying to come in the house." (Tr. 11). Ms. Huffman testified she asked her boyfriend to go outside and get her daughter in the house.
 {¶ 4} She testified further that Michael Sims put his arms around her daughter and was trying to get into the house when the defendant stuck her daughter in the face. She testified her daughter had a red bruise under her eyes and it was little swollen. She testified that photographs of her daughter's face taken shortly after the incident accurately described her injury. (Tr. 14). Ms. Huffman testified her daughter continued to see the defendant at the time of the trial.
 {¶ 5} She testified she visited her daughter five days before the trial. She testified she and her boyfriend got into a heated argument with the defendant and he pulled a gun on them. (Tr. 16). The prosecutor asked Ms. Huffman if there had been
 {¶ 6} other instances of domestic violence against her daughter at the hands of the defendant. Ms. Huffman replied, "Plenty, plenty, plenty." (Tr. 16).
 {¶ 7} Michael Sims corroborated Ms. Huffman's trial testimony. He denied knowledge of any other incidents of abuse and he explained the "gun" incident as probably an act of self-defense by the defendant in response to Dallas picking up a knife. (Tr. 24).
 {¶ 8} Officer Ronald Jordan of the Springfield Police Department testified he was dispatched to the Huffman apartment in the early morning hours of January 26, 2003, and interviewed Ms. Huffman, Mr. Sims, and Dallas Huffman. Jordan said Dallas Huffman was upset and he noticed swelling under her left eye. He testified he spoke to Dallas Huffman:
 {¶ 9} "A. She said that they went over to Columbus for the evening to visit some friends and just kinda hang out. On the way back from Columbus she Dallas and Mr. Sieng got into an argument of some sort. She said on the way back that he was upset she was upset [sic] they arrived in front of her house exited the car. Some of the beer bottles where [sic] thrown like the other two had mentioned. She said she did throw a beer bottle at him after he threw a beer bottle at her then she said that Mr. Sims came out and pulled her was attempting to pull her away from the situation and she was then struck in the eye by Mr. Sieng. (Tr. 35).
 {¶ 10} "Q. Are you the officer that took a photo, the photos?
 {¶ 11} "A. Yes, Yes ma'am."
 {¶ 12} Officer Jordan said the photographs accurately depicted Ms. Huffman's facial injury and he also observed some minor scratches on her neck. (Tr. 36).
 {¶ 13} Dallas Huffman, the victim, testified on behalf of the defendant. She admitted she threw beer bottles in the defendant's car. She denied the defendant struck her. She said she received the facial injury from a thrown beer bottle coming back at her.
 {¶ 14} The defendant testified that Tracey Huffman and Michael Sims lied because they didn't like him. He testified that Dallas Huffman threw beer bottles inside his truck at his front windshield. He did not know how Dallas received her facial injury. (Tr. 51, 52).
 {¶ 15} In his first assignment, Sieng contends that he was denied due process when the prosecutor elicited other acts testimony which was prejudicial and inadmissible. Specifically, he argues that the prosecutor knew this was improper evidence but sought to take advantage of his lack of legal experience. Specifically, the defendant objects to the following lines of inquiry by the prosecutor:
 {¶ 16} "The prosecutor asked Tracey Huffman and Michael Sims to relate the details of an incident that purportedly occurred on May 3, 2003 (five days before the trial). According to Tracey and Michael, Defendant was waiving a handgun in their presence during a domestic argument with Dallas. (15-16, 24).
 {¶ 17} "She asked Tracey Huffman whether `there had been other instance[s] of domestic violence against your daughter at the hands of the Defendant?' The witness responded, `[p]lenty, plenty plenty.' (16).
 {¶ 18} "She asked Dallas whether she had reported `many' incidents of domestic violence committed against her by Defendant. (44). When the witness responded in the negative, the prosecutor followed with the question, `[h]ave there been several incidents reported to the police by someone by others (sic)?' The witness said `[y]eah.' (45).
 {¶ 19} "During cross-examination, the prosecutor asked Defendant, `[t]here's been a long history of violence between you and Dallas Huffman hasn't there?' When Defendant denied this, she persisted with leading questions containing unsubstantiated accusations of violent behavior toward the putative victim, to wit, `[a]nd in fact there's been several times where Dallas appeared with injuries on her body as a result of violence between you. Isn't there?' and `[t]here have been other occasions where she has had injury to her body as a result of the violence between the two of you isn't there?' (50)."
 {¶ 20} The defendant notes that the prosecutor never offered a justification for delving into these incidents and he argues that evidence of uncharged crimes, wrongs, or acts is admissible for only certain limited purposes.
 {¶ 21} Evidence of uncharged crimes, wrongs, or acts is not admissible to prove the character of the accused in order to show that he acted in conformity therewith. Evid.R. 404(B). Such evidence may be admissible for the limited purposes of demonstrating motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. However, because this exception "carries the potential for the most virulent kind of prejudice for the accused," Statev. Snowden (1976), 49 Ohio App.2d 7, 8, 3 O.O.3d 92, 359 N.E.2d 87, 89, it must be strictly construed against the state. State v. Burson (1974),38 Ohio St.2d 157, 158, 67 O.O.2d 174, 175, 311 N.E.2d 526, 528.
 {¶ 22} The State argues that even if the challenged evidence was improperly admitted, it is not "plain error" which requires reversal of the defendant's conviction. The State notes that this was a bench trial and the court is presumed to consider only admissible evidence in rendering a verdict.
 {¶ 23} The defendant notes that his identity and his opportunity to commit the crime were not issues in dispute. He notes that he did not claim he accidentally struck the victim and his intent was not at issue. He notes that while it might be argued that prior acts of assaultive conduct may have some relevance to motive, preparation, or plan in relation to a subsequent assault, the events of May 3, 2003 could not have any relevance to these issues. Additionally, the defendant argues that the prosecutor made no attempt to establish a time frame for the other incidents of domestic violence. Lastly, he contends the prosecutor did not present substantial proof other incidents of abuse actually occurred.
 {¶ 24} The Medina County Court of Appeals has held that prior acts by a defendant against the same victim are admissible in domestic violence cases to prove the defendant's intent. State v. Blonski (1997),125 Ohio App.3d 103. In that case the defendant admitted to a domestic argument with his wife but denied that he had slapped her, grabbed her around the throat, or pushed her on the bed. Judge Baird wrote the following:
 {¶ 25} "`[P]rior bad acts by a defendant against the same victim are * * * admissible in domestic violence cases to prove the defendant's intent * * *.' State v. Johnson (1994), 73 Ohio Misc.2d 1, 3,657 N.E.2d 383, 384. However, when using `other acts' evidence, to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan, or system must have been utilized to commit the offense at issue and the other offenses. State v. Elliott (1993),91 Ohio App.3d 763, 633 N.E.2d 1144, 1148-1149. In the case at bar, both Blonski and Linda testified to their ongoing disagreements about finances and control within the marriage. These disagreements would occasionally escalate into Blonski's threatening, pushing, shoving, or hitting Linda. These prior incidents are certainly probative of Blonski's intent to cause harm to or threaten to cause harm to Linda during the May 25, 1996 incident for which Blonski was convicted in the court of common pleas. The domestic violence statute requires that the state prove that the act was done knowingly; we can see no reason why this cannot be done with proof that it was done intentionally."
 {¶ 26} We find the defendant's arguments to be more persuasive, but we are not inclined to find that the admission of this evidence of other acts of uncharged conduct amounted to plain error.
 {¶ 27} In State v. Barton (1991), 71 Ohio App.3d 455, the Hamilton County Court of Common Pleas held that the trial court presiding over a child endangering and felonious assault case did not commit plain error by admitting evidence of prior incidents of child and spousal abuse by the defendant. The court carefully considered the trial record, and concluded that the admission of the "other acts" testimony did not constitute fundamental error of such a magnitude as to affect either a substantial right of the defendant or the fairness, integrity or public reputation of the proceedings. See Crim. R. 52(B).
 {¶ 28} The Ohio Supreme Court has made it clear that "plain error" under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91 at syllabus 3.
 {¶ 29} In this matter the State presented substantial evidence to establish the defendant's guilt. Both the victim's mother and her boyfriend testified they saw Mr. Sieng strike Dallas Huffman in the face. Officer Jordan testified that the victim, Dallas Huffman, told him that the defendant had struck her in the face. Jordan presented photographs depicting Ms. Huffman's injury.
 {¶ 30} The victim's mother did testify that there were plenty of other instances of domestic violence committed by the defendant upon her daughter. This evidence was improper without providing an adequate foundation for it. The testimony concerning the gun incident five days before trial was largely negated by Michael Sims' concession that the defendant's waving of the gun was an appropriate act of self-defense in response to Dallas Huffman's conduct.
 {¶ 31} The prosecutor did not include the "other acts" testimony in support of her final argument. The matter was tried to an experienced trial judge who is presumed to consider only relevant, material, and competent evidence unless it affirmatively appears to the contrary. Statev. Post (1987), 32 Ohio St.3d 380 at 384. The trial court made no mention of the other acts testimony in finding the defendant guilty of the charge. (Tr. 54). The first assignment of error is overruled.
 {¶ 32} In his second assignment of error, he contends his conviction is against the manifest weight of the evidence. Sieng notes that the victim testified under oath that he did not assault her. He also notes that the record demonstrated that Tracey Huffman and Michael Sims bore considerable animosity toward him.
 {¶ 33} In determining whether the verdict is against the manifest weight of the evidence the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the jury or judge clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 34} We have carefully reviewed the evidence and find the evidence to be substantial. There is no evidence to suggest that the trial judge lost her way in resolving the evidentiary conflicts. The defendant's conviction is not a manifest miscarriage of justice. The second assignment of error is likewise overruled.
Judgment Affirmed.
Wolff, J., and Grady, J., concur.