OPINION
{¶ 1} Defendant-appellant Todd Hawthorne appeals from his conviction in the Columbiana County Common Pleas Court of burglary in violation of R.C. 2911.12 (A)(3) and possession of criminal tools in violation of R.C. 2923.24(A). Three issues are presented in this appeal. The first issue is whether the state's failure to comply with the rules of discovery, referencing prior bad acts and making improper statements in closing arguments, amounted to prosecutorial misconduct warranting a new trial. The second issue is if the above errors were harmless, did the cumulative effect of those alleged errors deny Hawthorne a fair trial. The final issue is whether the conviction was against the manifest weight of the evidence. For the reasons expressed below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On December 11, 2003, between 3:00 p.m. and 7:45 p.m., Hope Ewing's house located at 880 Logan Street in East Liverpool, Ohio, was broken into and a number of items of personal property were taken. These items included money, a PlayStation 2, video games, memory cards, a camcorder, and a cordless drill set. (Tr. 33-36). Upon further inspection of the house, Ewing discovered that entry to the house had been obtained through the basement door and that the phone lines to the house had been severed. (Tr. 28). Since the phone lines were cut, Ewing drove to the police station to report the burglary.
 {¶ 3} Later that same night at approximately 10:45 p.m. Anthony Wagoner was pulled over by the East Liverpool Police Department on a routine traffic stop. Hawthorne was the passenger in the car. Both individuals had outstanding warrants and, thus, were placed under arrest. An inventory search was then performed on the car. In the car, the officers found a PlayStation 2, a camcorder, a cordless drill set, and video games.
 {¶ 4} Ewing was then called and informed that the police might have found the items that were taken from her house. She was asked to come to the police station and identify the items. She positively identified the PlayStation 2, the camcorder, the cordless drill set and some of the video games as the ones that were taken from her house.
 {¶ 5} Ewing was then told that the items were found in a car driven by Wagoner and that Hawthorne was a passenger in the car. It was at this point that Ewing informed the officers that she had seen Hawthorne earlier that day walking on a one-way street coming away from her residence. She stated that Hawthorne tried to avoid being spotted by using his black coat to hide his face. She stated that another individual that she did not know was with him. Later, she saw Wagoner in court and stated that he was the individual with Hawthorne.
 {¶ 6} The day after Hawthorne and Wagoner were arrested, another search was done on the car; the owner of the car, Wagoner's girlfriend Jamie Dutcheon, consented to the search. This search yielded a black jacket containing PlayStation memory cards, a picture of Hawthorne and Ewing together (Hawthorne and Ewing had dated about 18 months prior to this date), and two bent screw drivers. Underneath the passenger seat were a pair of gloves and wire cutters.
 {¶ 7} On January 30, 2004, the Columbiana County Grand Jury issued a three count Secret Indictment against Hawthorne. The first count was for receiving stolen property in violation of R.C. 2913.51(A), a fifth degree felony. The second count was for burglary in violation of R.C. 2911.12(A)(2), a second degree felony. The third count was for possession of criminal tools in violation of R.C. 2923.24, a fifth degree felony.
 {¶ 8} A bench trial was held on July 12, 2004, after which the trial court found Hawthorne guilty of burglary in violation of R.C. 2911.12(A)(3), the lesser included offense of that which he was indicted, and possession of criminal tools in violation of R.C. 2923.23(A). The court found him not guilty on the receiving stolen property charge. Hawthorne was sentenced on October 8, 2004, to two years on the burglary conviction and seven months on the possession of criminal tools conviction. The sentences were ordered to be served concurrently. Hawthorne appeals raising three assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 9} "PROSECUTORIAL MISCONDUCT IN FAILING TO COMPLY WITH THE RULES OF DISCOVERY, BY UPDATING THE STATE'S WITNESS' ADDRESS, BY REFERENCING PRIOR BAD ACTS, AND BY MAKING IMPROPER CLOSING REMARKS WARRANTS A NEW TRIAL IN THE CASE SUB JUDICE."
 {¶ 10} Hawthorne makes three distinct arguments in claiming that prosecutorial misconduct occurred in this case: 1) discovery violation; 2) admission of prior bad acts; and 3) improper statements made during closing arguments.
 DISCOVERY {¶ 11} Hawthorne argues the state committed prosecutorial misconduct when it failed to abide by the discovery rules. Specifically, Hawthorne argues that the state failed to comply with Crim.R. 16(B)(1)(e) in that it failed to update the address for Ewing.
 {¶ 12} In reviewing prosecutorial violations of the discovery rule, the Ohio Supreme Court case of State v. Joseph,73 Ohio St.3d 450, 1995-Ohio-288, provides the tri-part test to determine whether the discovery violation amounted to reversible error.State v. Williams, 9th Dist No. 21840, 2004-Ohio-4316, ¶ 8. InJoseph, the Court explained that the state's failure to provide discovery will not amount to reversible error unless there is a showing that "(1) the prosecution's failure to disclose was a willful violation of [Crim.R. 16], (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." Joseph, 73 Ohio St.3d at 458, citing State v. Parson
(1983), 6 Ohio St.3d 442.
 {¶ 13} The record in this case shows that on July 8, 2004, the state sent Ewing's subpoena to the 880 Logan Street, East Liverpool, Ohio address. The subpoena was returned and marked that Ewing was not found and that she had moved to West Virginia. This returned subpoena was file stamped July 13, 2004.
 {¶ 14} The trial started on July 12, 2004. At the beginning of the trial, Hawthorne moved to dismiss for failing to update Ewing's address. (Tr. 7-10). Hawthorne's attorney, Melody Calhoun, stated that she tried to talk to Ewing on July 11, 2004 and it was at this point that she discovered that Ewing was no longer at the 880 Logan Street, East Liverpool, Ohio address. However, the prosecutor stated that he spoke to defense counsel on July 9, 2004, and informed her that Ewing would be in his office that afternoon should she desire to speak to her.
 {¶ 15} Considering all the above, Hawthorne fails to show that the failure to update the address of Ewing was willful. Given that the state sent Ewing's subpoena to the 880 Logan Street address, it can be concluded that it was not aware that Ewing had moved until it was notified that the subpoena could not be delivered. The state admits that it was aware on July 9, 2004 (Friday) that Ewing's address was different from the one it disclosed on the discovery. Instead of formally updating the discovery, it called defense counsel and informed her that Ewing would be in his office that afternoon if she wished to speak with her. The trial was scheduled to start Monday. If the state had formally updated discovery, it is questionable whether it would have reached defense counsel prior to trial. It appears that while possibly the state should have also formally updated discovery, its action of notifying defense counsel that Ewing would be in his office that Friday afternoon was the best possible way to notify counsel of the update. Thus, given all the above, we cannot conclude that the failure to update discovery was willful.
 {¶ 16} Regardless, even if this court could conclude that it was willful, Hawthorne has failed to show the prejudicial effect. First, it does not appear Ewing's testimony would have been different had the defense had the opportunity to talk to her prior to the trial. She testified as to what was stolen from her house and to what her prior relationship was with Hawthorne. She admitted that she had not dated him in the last 18 months and that they would wave at each other when they saw each other. She also stated that after they broke up he would go to her house and knock on her door and that there was an altercation between her husband and him at one point. Thus, speaking to her before trial may not have helped Hawthorne.
 {¶ 17} Secondly, if the defense wanted a continuance, the trial court stated it would grant one. (Tr. 9). However, the defense stated that it did not want a continuance. (Tr. 9). It stated that a continuance would not help because Ewing informed Hawthorne's counsel that she would not speak with them.
 {¶ 18} Thirdly, as suggested above, defense counsel was given the opportunity to speak with Ewing prior to trial on July 9, 2004, in the prosecutor's office. Defense counsel did not take advantage of this opportunity.
 {¶ 19} Accordingly, it cannot be concluded that prejudice resulted from the alleged discovery violation.
 {¶ 20} Thus, having failed to meet all three of the required elements, this argument regarding alleged discovery violation and prosecutorial misconduct fails.
 PRIOR BAD ACTS {¶ 21} Next Hawthorne argues that prosecutorial misconduct occurred when the state repeatedly brought up Hawthorne's prior bad acts: 1) that he had at least one outstanding warrant at the time of this arrest, and 2) that he was on probation for another offense at the time of his arrest.
 {¶ 22} Hawthorne is correct that the state did mention that he had outstanding warrants when he was arrested. (Tr. 13, 58-59). However, Hawthorne did not object to the testimony.
 {¶ 23} The failure to object waives all but plain error. SeeState v. Coley, 93 Ohio St.3d 253, 2001-Ohio-1340. Plain error is an "obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings."State v. Moore, 7th Dist. No. 00AP0741, 2001-Ohio-3439, quotingState v. Craft (1977), 52 Ohio App.2d 1, 7. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Issa,93 Ohio St.3d 49, 56, 2001-Ohio-1290. The plain error doctrine is applied in extremely rare cases involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, challenging the legitimacy of the underlying judicial process itself. Goldfuss v. Davidson, 79 Ohio St.3d 116,122-123, 1997-Ohio-401. Thus, the question is whether the admission of Hawthorne's outstanding warrants, i.e. prior bad acts, amounted to plain error.
 {¶ 24} Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith. State v. Elliot (1993), 91 Ohio App.3d 763, 770; Evid.R. 404. However, Evid.R. 404(B) provides that evidence may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other acts may also be admissible to establish an element of the crime. State v. Smith
(1990), 49 Ohio St.3d 137, 139-140.
 {¶ 25} It is unclear from the record what the underlying crime was on the outstanding warrant. Defense counsel on cross-examination indicated that it was for a driving under suspension charge. (Tr. 85). However, the officer could not confirm that that was accurate. (Tr. 84). The only information he could provide was that it was a warrant out of East Liverpool Municipal Court. (Tr. 84).
 {¶ 26} This outstanding warrant in no way could fall under the exceptions listed in Evid.R. 404. Thus, the warrant should not have been raised at trial.
 {¶ 27} That said, the admittance of this evidence does not amount to plain error. This was a bench trial; thus, the matter was tried to an experienced trial judge who is presumed to consider only relevant, material, and competent evidence unless it affirmatively appears to the contrary. State v. Sieng, 2d Dist. No. 2003-CA-35, 2003-Ohio-7246; State v. Richey,64 Ohio St.3d 353, 357, 1992-Ohio-44; State v. Post (1987),32 Ohio St.3d 380, 384. The trial court made no mention of the other acts testimony in finding Hawthorne guilty of the charge. Sieng, 2d Dist. No. 2003-CA-35, 2003-Ohio-7246 (finding that the admission of unchallenged other acts evidence did not amount to plain error). As will be discussed under the third assignment of error, there is credible evidence that linked Hawthorne to the crime scene and the stolen items. Thus, since a trial court is presumed to only consider relevant evidence unless it affirmatively appears otherwise, we find that the admission did not amount to plain error. Accordingly, this argument lacks merit.
 {¶ 28} As to the claim that the state admitted prior bad acts by stating that Hawthorne was on probation at the time this crime was committed, this argument also fails. Despite Hawthorne's insistence to the contrary, the state did not mention that Hawthorne was on probation. It was Hawthorne who elicited testimony from Officer Tagenthorse that established that Hawthorne was on probation at the time of the arrest. (Tr. 85). During the cross-examination of Officer Tagenthorse, the following colloquy occurred:
 {¶ 29} "Q. Okay. Okay. Uh * * * as far as you know it was a minor charge though? Not a felony? [Discussing what the underlying crime was on the outstanding warrant].
 {¶ 30} "A. Well, it was a probation violation." (Tr. 85).
 {¶ 31} Thus, it was Hawthorne who raised these bad acts. As such, it was invited error.
 {¶ 32} Regardless, following the same reasoning espoused above, the matter was tried to an experienced trial judge who is presumed to consider only relevant, material, and competent evidence, unless it is affirmatively shown otherwise. The record is devoid of any indication that the trial court based its determination on the fact that Hawthorne was on probation. Thus, like the warrant argument, this argument also fails.
 CLOSING ARGUMENTS {¶ 33} Lastly, Hawthorne complains that the state made two improper remarks during closing arguments that amounted to prosecutorial misconduct. The Ohio Supreme Court has held that "[t]he test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Lott (1990),51 Ohio St.3d 160, 165. However, like the bad acts testimony, the defense did not object to the alleged improper statements. Thus, all but plain error is waived. State v. Wogenstahl,75 Ohio St.3d 344, 360, 1996-Ohio-219. The alleged prosecutorial misconduct will constitute plain error only if it is clear that Hawthorne would not have been convicted in the absence of the improper comments. State v. Griffin (Nov. 17, 2000), 6th Dist. No. L-98-1215.
 {¶ 34} The first comment made during closing arguments that Hawthorne complains of was a statement made about a "crack head." (Tr. 177). Hawthorne contends that since there was no evidence of drug use this was an improper comment used to improperly influence the trier of fact.
 {¶ 35} The statement made by the state as to a "crack head" is as follows:
 {¶ 36} "Now if this is some crack head running around East Liverpool, looking to steal somebody's camcorder, or steal somebody's PlayStation, and kids' video games, and he drives passed and he sees a car in the drive, and he hears the radio on, and sees the light on, does he go in? No. That crack head passes by that house.
 {¶ 37} "But if this is a kid who's obsessed with the occupant of the house, and sees that her husband is gone, he sees her car in the driveway, and presumed that she's there late in the evening, what does he do? He cuts the phone lines, because he's going in there any way. And that's exactly what this kid did. He cuts those phone lines, the most peculiar burglary I've see in fifteen years. He cuts the phone lines and he goes in through the basement, and he finds her not home. So, what does he do?" (Tr. 177-178).
 {¶ 38} During trial, the defense was trying to show that it was someone else (possibly some random person) who broke into Ewing's house and stole her property and that Hawthorne had merely found the property on the road and picked it up. It was the state's case that Hawthorne was obsessed with Ewing and broke in because he thought she was there.[1]
 {¶ 39} The state's use of the "crack head" story was a way to show that the defense's theory was illogical. Reading the closing argument as a whole, it is clear that the point the state was trying to make was that the actions taken by the person committing this crime suggests that the person knew the victim, rather than it being a random burglary, i.e. burglary motivated by drug use — "crack head" story. Furthermore, it is clear that the state in no way was insinuating that Hawthorne was a drug user.
 {¶ 40} Thus, since considerable latitude is afforded to counsel in closing arguments, State v. Ballew,76 Ohio St.3d 244, 255, 1996-Ohio-81, a prosecutor may freely comment on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. Lott,51 Ohio St.3d at 165. The state's "crack head" story and the point it was making clearly was a comment on what the evidence had shown and what the reasonable inferences the prosecutor believed could be drawn. Thus, the "crack head" statement was not improper.
 {¶ 41} The second statement complained of was the state's characterization of this burglary as "the most peculiar burglary I've seen in fifteen years." (Tr. 178). As with the "crack head" statement, this statement was used to show that this was not a random burglary. Reading the statement in its context, it is apparent that the peculiar nature of the burglary comes from the fact that the phone lines were cut, and that other evidence could indicate that Ewing may have been in the house. "The most peculiar burglary I've seen in fifteen years," statement was used as a characterization to show that this burglary was done by a person obsessed with Ewing. For the same reasons as above, this statement also was not improper.
 {¶ 42} Nonetheless, even if this court were to conclude that the statements were improper, they would not amount to plain error. As stated earlier, this was a bench trial. As such, it is presumed that the trial court relied on only relevant, material and competent evidence in arriving at its judgment absent a showing to the contrary. Sieng, 2d Dist No. 2003-CA-35,2003-Ohio-7246; Richey, 64 Ohio St.3d at 357. Nothing in the record indicates that the trial court was influenced by these comments. State v. Turner, 10th Dist. No. 04AP-364,2004-Ohio-6609, ¶ 24. Accordingly, this argument also fails for this reason.
 {¶ 43} For all the above reasons, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 44} "THE ABOVE ERRORS, WHEN TAKEN TOGETHER, DEPRIVED THE DEFENDANT/APPELLANT, TODD HAWTHORNE, OF A FAIR TRIAL AS GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS' DUE PROCESS CLAUSES."
 {¶ 45} Hawthorne argues that even if the errors complained of in assignment of error number one were harmless individually, that when they are considered together the cumulative effect of those errors denied him a fair trial.
 {¶ 46} It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448. In order to find "cumulative error," we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas, 2d Dist. No. 2000-CA-43, 2001-Ohio-1353.
 {¶ 47} However, because at most there was only one possible error (the admission of prior bad acts) and not multiple errors, there can be no cumulative effect. State v. Blankenship (1995),102 Ohio App.3d 534, 557. Accordingly, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 48} "THE CONVICTION OF THE DEFENDANT, TODD HAWTHORNE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 49} Analysis under the manifest weight of the evidence standard requires an appellate court to review the entire record, reweigh the evidence and all reasonable inferences, consider the credibility of witnesses, and resolve conflicts in the evidence. Such an undertaking essentially places the appellate court in the position of the thirteenth juror. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, citing Tibbs v. Florida (1982),457 U.S. 31, 42.
 {¶ 50} An appellate court will only reverse and remand a conviction as contrary to the manifest weight of the evidence in order to prevent a miscarriage of justice. The authority to do so is reserved for the rare and exceptional case where the evidence weighs heavily against the conviction and convinces us that the trier of fact clearly lost its way. Thompkins,78 Ohio St.3d at 387, 1997-Ohio-52.
 {¶ 51} In the case at hand, the evidence does not weigh heavily against the conviction. Testimony revealed that Hawthorne and Ewing had a prior relationship and that when this relationship ended Hawthorne continued to pursue Ewing. (Tr. 21). Ewing testified that Hawthorne knew where she lived and knew what vehicle she drove. (Tr. 30). Further, she stated that earlier in the day prior to the break-in she saw Hawthorne walking on the street she lived on and that he tried to hide from her by covering his head with his jacket. (Tr. 21). She also explained that where she lived there would be no reason for him walking up there since it was a dead-end street and nothing was there but a few houses. Ewing also testified that before leaving that night in her husband's car that she left her car in the driveway and left a radio on in the house so that it looked like someone was home. She testified that a camcorder, a PlayStation 2, PlayStation 2 games, PlayStation memory cards, a drill set, and money were taken from her house, and that her telephone line was cut. (Tr. 33-36).
 {¶ 52} At trial, Ewing identified the coat that was found in the car Hawthorne was a passenger in, as the same coat she saw Hawthorne in earlier. (Tr. 38, 63). In this coat, the police found two bent screwdrivers, PlayStation memory cards, and pictures of Ewing and Hawthorne together. (Tr. 113-117). Furthermore, in that same car that Hawthorne was a passenger was the property that was taken from Ewing's residence, i.e. camcorder, PlayStation 2, PlayStation 2 games, and a drill set. (Tr. 333-6, 60-63). The second search of the vehicle, revealed that under the passenger's seat where Hawthorne was sitting were a pair of wire cutters and a pair of unlined leather work gloves.
 {¶ 53} The wire cutters and a piece of spliced telephone wire at Ewing's house were sent to the Ohio Bureau of Criminal Investigation and Identification (BCI). A tool mark comparison test was done on the wire cutters and the sample wire. (Tr. 131). The test determined that there were trace amounts of copper wire on the wire cutters and that the sample telephone wire from Ewing's house was composed of copper. (Tr. 134-135). However, the examiner from BCI could not confirm that the copper wire from the wire cutters came from the copper telephone wire at Ewing's residence. (Tr. 136). At most, the examiner could say that the copper that was found on the cutters could have come from the sample wire. (Tr. 136).
 {¶ 54} This testimony could support the trial court's finding that Hawthorne was guilty of burglary and possession of criminal tools. Yet, it is noted that Hawthorne maintains that he and Wagoner found the items in a bag on Lisbon Street and just picked them up and put them in the car. Thus, given the trial court's verdict it can be concluded that it did not believe this story. Credibility of the witnesses is best left to the trier of fact (which in this case was the trial court) as it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections." Seasons Coal Co., Inc., v. Cleveland (1984),10 Ohio St.3d 77, 80. Thus, the trial court was in the best position to determine whether Hawthorne's story was believable and, as such, when considering all the other evidence will not be second-guessed.
 {¶ 55} Hawthorne also contends that in all the above evidence there is no direct evidence that he "ever entered into Ewing's residence at all, let alone for the purposes of committing an offense therein." Hawthorne is correct that there is no direct evidence. However, he fails to recognize that there is an ample amount of circumstantial evidence which links him to the burglary, i.e. the stolen property being in his possession, the wire cutters with copper residue and his prior relationship with the victim. It has previously been stated numerous times that circumstantial evidence and direct evidence inherently possess the same probative value. State v. Butler, 10th Dist. No. 03AP-800, 2005-Ohio-579, ¶ 32, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus. Thus, this argument lacks merit.
 {¶ 56} For all the above stated reasons we cannot conclude that the trial court clearly lost its way when it found Hawthorne guilty of burglary and possession of criminal tools. Thus, this assignment of error lacks merit.
 {¶ 57} In conclusion, for all of the aforementioned reasons, Hawthorne's conviction is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.
[1] As will be discussed further in depth in assignment of error number three the evidence could support this theory.